**464**

Paul SOLOMON and Jacqueline Solomon, his Wife, as Joint Tenants, Suing Derivatively in the Right and for the Benefit of the Starr Broadcasting Group, Inc.

v.

William F. BUCKLEY, Jr. et al.

Civ. A. Nos. 76–688, 77–2681 and 78–1139.

United States District Court,
E. D. Louisiana,
New Orleans Division.

April 22, 1980.

Arthur N. Abbey, New York City, Louis R. Koerner, New Orleans, La., for plaintiff.

R. E. Barkley, Jr., New Orleans, La., Edward A. McConwell, Overland Park, Kan., Charles W. Lane, III, Corinne Hopkins, New Orleans, La., Sheldon Oliensis, New York, N. Y., for defendants.

BEER, District Judge.

In September, 1977, plaintiffs Paul and Jacqueline Solomon instituted this shareholders' derivative action for the benefit of Starr Broadcasting Group, Inc. ("SBG," hereinafter) against certain SBG directors and officers, alleging breach of their fiduciary duty. This action was essentially similar to an action filed in March, 1976, and, thereafter, dismissed on jurisdictional grounds in August, 1977. The complaint charges that the individual defendants, while in control of, and in their capacity as directors and fiduciaries of SBG, entered into and/or caused to be approved various unwarranted and/or improper corporate transactions, including certain transactions between SBG and themselves. Those SBG directors individually sued were: Peter Starr, Michael Starr, Gordon Ryan and William Buckley. Plaintiffs alleged that these four directors had, individually and in their own behalf, participated in certain outdoor theatre operations in Texas. Plaintiffs went on to allege that the operations above described appeared, subsequent to the purchase by the four directors, to be destined for an unsuccessful conclusion. They allege that this then precipitated the sale of these theatres to SBG on terms that were not in SBG's interests but very much in the interest of the four individuals who effectively

used the corporation as a bona fide purchaser when, in fact, the venture was knowingly in difficulty.

An additional derivative action, consolidated with the proceeding described above, was commenced by the same plaintiffs against certain of SBG's lending institutions, Teacher's Insurance and Annuity Corporation and Chemical Bank, alleging that these defendants wrongfully permitted and knowingly acquiesced in the execution of various lending agreements with SBG when they knew or should have known that such agreements were designed to finance ventures that clearly would accrue to the detriment of SBG and to the individual advantage of the four SBG directors named above. Specifically, one such agreement involved Teacher's Insurance and Annuity Corporation and provided for an increased interest rate on the loan and a commensurate reduction in the exercise price of warrants held by Teacher's for the purchase of 120,000 shares of SBG's common stock.

In May, 1978, subsequent to these alleged events and as a result of various negotiations, Shamrock Broadcasting Company, Inc. agreed to buy SBG and to pay $15.25 per share for the SBG stock. The purchase proposal was, thereafter, accepted by the SBG's shareholders and the ultimate purchase transaction took place in the form of a merger of SBG and Shamrock which was consummated on July 18, 1979.

Meanwhile, various defendants in these proceedings, including SBG, were also defendants in proceedings instituted by the Securities and Exchange Commission in the U. S. District Court for the District of Columbia. Those defendants have entered into settlements in the SEC proceedings without admitting any liability in either those proceedings or in this case. However, a condition of the settlements in the SEC proceeding was an agreement by SBG to turn over any monetary recovery resulting from this lawsuit to former SBG shareholders whose interests had been adversely affected as a result of the alleged wrongdoings thereinabove discussed. Even so, SBG (now succeeded by Shamrock) continues to press certain claims that SBG had sought to enforce in its own behalf against the remaining defendants. Thus, at the same time and in the same proceeding, Shamrock seeks to assert the claims in behalf of the former SBG shareholders and in its own behalf as successor to SBG.

On July 11, 1979, plaintiffs and the by then (as a result of the merger) nominal defendant SBG brought a motion to realign its own claims and the claims it sought to prosecute as the stockholders' representative. The magistrate before whom this motion was argued subsequently denied the motion as premature but went on to observe that the motion should be reconsidered subsequent to the then imminent consummation of the proposed merger arrangement between SBG and Shamrock wherein, as a result of the merger, Shamrock remained as the only existent entity. In written reasons, he stated:

"Plaintiffs move to realign STARR BROADCASTING as a plaintiff at the moment of the sale of stock by STARR BROADCASTING to SHAMROCK because plaintiffs fear the non-existence of STARR BROADCASTING will divest the stockholders of their right of action against the directors in the first suit and against the lenders in the second suit. That is not correct. The right of action survives the merger. *Fleming v. Southern Kraft Corp.*, D.C.N.Y.1942, 43 F.Supp. 541; *Moody v. Albemerle Paper Co.*, D.C. N.C.1970, 50 F.R.D. 494.

Plaintiffs' fear that the right of action will disintegrate is unfounded. Those rights will simply be vested in the purchaser of the stock (SHAMROCK). *De-Villiers v. Atlas Corp.*, 360 F.2d 292 (10th Cir. 1966)."

Consistent with the magistrate's ruling and within a month of the merger becoming final, Shamrock sought (on August 21, 1979) to be substituted in these actions in place of Paul and Jacqueline Solomon. Concurrently, all of the defendants in these proceedings filed motions to dismiss based upon the contention that the Solomons had lost their shareholder status upon the sale of their

shares to Shamrock and, accordingly, had lost their standing to prosecute this action. They further argued that Shamrock had never had standing and that SBG's standing had evaporated by application of the same reasoning as that applied to the Solomons.

F.R.C.P. Rule 23.1 describes dual requirements for a plaintiff who seeks standing to litigate claims on behalf of the corporation: (1) the plaintiff must have owned stock in the corporation at the time of the transaction of which he complains, and (2) the plaintiff must be a shareholder of the corporation at the time the suit is brought.

F.R.C.P. Rule 25(c) states:

*"Substitution of Parties*

(c) *Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. . . ."

*Schilling v. Belcher*, 582 F.2d 995 (5th Cir., 1978), indicates that the stock ownership requirement noted in F.R.C.P. Rule 23.1 "continues throughout the life of the suit and that the action will abate if the plaintiff ceases to be a shareholder before the litigation ends."

Since the Solomons have, clearly, sold their stock and since their shareholders' derivative action is, clearly, pending, they have—say the defendants—lost standing to further prosecute this case. However, *Schilling* is based upon a somewhat different factual situation: While plaintiff's shareholder derivative suit was pending on appeal, Coastal States Gas Corp. purchased 100% of the outstanding stock of Belcher Oil Co., the corporation on whose behalf plaintiff Schilling was suing. The Fifth Circuit Court of Appeals then vacated the claims against the defendants which plaintiff asserted solely on behalf of the corporation, indicating that the action abated when the plaintiff ceased to be a shareholder of Belcher Oil Co. In *Schilling*, the merger agreement was apparently silent with respect to the pending derivative action, and the surviving corporation expressed no desire to continue the action.

Here, Shamrock (as SBG's successor) seeks, affirmatively, to continue prosecution of these actions. Shamrock's attorney of record has stated, in open court, the affirmative position on the part of Shamrock to continue this litigation.

Had SBG's motion for realignment been granted prior to the merger, SBG would have become the actual plaintiff, prosecuting its claims directly rather than derivatively. Thereafter, Shamrock, as the surviving merged corporation, would ordinarily step into the shoes of the disappearing corporation (SBG) and proceed with the lawsuit. If, upon the merger, Shamrock succeeded to all the rights and obligations of SBG, including this lawsuit, and if the cause of action belongs, in fact, to the corporation in a derivative action (F.R.C.P. Rule 23.1), then should not Shamrock have its day in court?

 Derivative action takes place in circumstances where the corporation is unable to act for itself because the directors are antagonistic. *Koster v. Lumberman's Mutual Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). This was exactly the situation at the beginning of this litigation. During its course, the composition of SBG's Board changed, so that by March 30, 1979, none of the original director-defendants remained on the Board. On that date, SBG's shareholders voted to approve a merger with Shamrock. It is a well established general rule that actions by or against a corporation do not abate by reason of its consolidation with another company, but generally in such cases the proper procedure is to substitute the successor company as plaintiff or defendant. F.R.C.P. Rule 25(c). *DeVilliers v. Atlas Corp.*, 360 F.2d 292 (10th Cir., 1966). While it is apparent to the court that a decision to deny the abatement motions will have the effect of changing the complexion of these proceedings into, for all practical purposes, a class action in which the class representative, Shamrock, by the terms of the Consent & Undertaking of SBG, and the Final Judg-

ment of Permanent Injunction and other Equitable Relief, is precluded from participating in any financial recovery, it, nevertheless, appears that this exact result may most effectively and fairly serve the ends of justice in a judicially economical way.

The settlement of the SEC litigation specifically required that:

"6. SBG, its successors and assigns, are ordered to comply with its undertaking to *permit all funds recovered in this action,* or in the pending derivative actions, or in any derivative or class action which may be commenced asserting allegations essentially similar to those in the Commission's Complaint, *to be placed into a fund* ("the Fund") *which may be established by order of the United States District Court for the Eastern District of Louisiana* (the New Orleans Court). *The Fund shall thereafter be distributed in accordance with the order of the New Orleans Court,* to be rendered after a hearing upon notice to the Commission, SBG and all other interested parties as designated by that Court, provided however (i) that no individual defendant in this action or any member of an individual defendant's family, or any entity controlled by any individual defendant, shall be entitled to participate in such distribution, and (ii) that Shamrock, as successor in interest to SBG, shall not be entitled to participate in such distribution (although, in the event the proposed merger is not consummated, SBG expressly retains the right to petition the New Orleans Court for all or any part of the Fund, and nothing herein shall be deemed a waiver of such right). Notwithstanding anything to the contrary herein contained, if, as a result of this litigation, the derivative actions or otherwise, SBG or its successor in interest receives (i) *the return of improperly issued or unpaid-for shares of SBG,* and/or (ii) *payment by holders of SBG warrants or their successor(s) in interest on account of the exercise of such SBG warrants,* and/or (iii) *the forgiveness or abandonment of any real or alleged indebtedness or claim,* such shall not be deemed funds which are required to be placed in the Fund, but shall be returned, abandoned and/or paid to SBG or its successor in interest. (Emphasis mine.)"

Thus, by the terms of the above, all funds recovered in these proceedings, except for specific reservations to Shamrock (SBG) set out above, must be paid to certain former shareholders of SBG.

If Shamrock cannot be substituted as plaintiff here, the above noted SBG claims, in their own behalf and in behalf of the shareholders', may, for all practical purposes, be extinguished.

In *Niesz v. Gorsuch,* 295 F.2d 909 (9th Cir., 1961), a shareholder who lost standing to sue derivatively when the involved corporation merged into another corporation did not have his claim dismissed. The court remanded the action to permit opportunity for the surviving corporation to join in the suit. Here, Shamrock seeks to continue prosecution of this suit on behalf of the shareholders, aware that the passage of time since the commencement of the derivative actions could very possibly now render any newly instituted action vulnerable to statute of limitations. It appears to the court that Shamrock may now, very likely, be the only entity through which these pending claims in behalf of the SBG stockholders may continue to be litigated.

Other courts have invoked equitable considerations in similar instances. In *Marco v. Sachs,* 201 Misc. 934, 109 N.Y.S.2d 226 (Sup.Ct., 1951), defendants sought summary judgment in stockholders' derivation action because of plaintiff's alleged loss of her status as stockholder when such corporation (Blue Ridge Corp.) merged into another corporation (Blue Ridge Mutual Fund, Inc.). In denying defendants' motion, the court stated:

"The present application could be construed as tantamount to a repudiation of the assignment made with the sanction of the federal courts. It is predicated on grounds purely technical, which equity, in the absence of compulsion not here present, will disregard. Equity looks to the substance, not the form, *Small v.*

*Sullivan,* 245 N.Y. 343, 345, 157 N.E. 261; *Weinert v. Kinkel,* 296 N.Y. 151, 71 N.E.2d 445, 172 A.L.R. 688.

■ As was pointed out in *Holmes v. Camp,* 186 App.Div. 675, 175 N.Y.S. 349, affirmed 227 N.Y. 635, 126 N.E. 910, 186 App.Div. at page 679, 175 N.Y.S. at page 352, of the Appellate Division opinion. 'An effort should be made to uphold the right of action, if it can be legally done, for, otherwise, a means altogether too handy is presented and sanctioned for destroying the rights of minority stockholders.' "

*Platt Corporation v. Platt,* 21 A.D.2d 116, 249 N.Y.S.2d 75 (Sup.Ct., 1964), discusses the maintaining of a merged corporation's action against certain directors and officers instituted before the merger in the following language:

"Policy and equitable considerations weigh heavily in favor of rather than against the conclusion that the causes of action against the defendants did not become obliterated by the merger of the wronged corporation into another corporation. To hold that a merger generally would have the effect of destroying such causes of action would be tantamount to paving the way for deliberate corporate pilfering by management and then for the immunization of the guilty officers from liability therefor by their arranging for a merger or consolidation of the corporation into or with another corporation. So the causes of action here should be sustained . . . ."

■ In summary, the timely but unsuccessful attempt to realign SBG as plaintiff, coupled with the affirmative determination of Shamrock, as SBG's successor, to continue prosecution of this action, convinces the court that, upon the merger, Shamrock should be found to have succeeded to the rights and obligations of SBG, including the prosecution of this lawsuit. Since the judgment signed by Judge Gesell in the U. S. District Court for the District of Columbia assures that any recovered monies from this lawsuit will go to the former aggrieved shareholders of SBG, the equitable result of such a determination is manifest.

Under these circumstances, accordingly, defendants' motions to dismiss and/or abate will be denied. Shamrock shall, accordingly, be substituted as plaintiff in its own behalf and in behalf of the former SBG stockholders. Since this is a result which the court hastens to acknowledge may be more equitably supported than legally justified, I see fit to invoke 28 U.S.C.A. § 1292(b) in order to certify this matter to the Fifth Circuit Courts of Appeal, since I believe that resolution of same involves interpretation of a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate determination of this litigation.

Motions to dismiss and/or abate denied. The court, on its own motion, substitutes Shamrock Broadcasting Co., Inc. as party plaintiff and certifies its ruling in accordance with 28 U.S.C.A. § 1292(b).