438

William F. OVERBERGER, Mary L. Overberger, James E. and Joan Overberger and Charles G. Overberger, Trustee, individually and on behalf of all other stockholders of Laurel National Bank, Plaintiffs,

v.

BT FINANCIAL CORPORATION and Laurel Bank, Defendants,

and

William P. WHITE, Jack M. Calandra, James H. Lyons, James D. Commons, Marjorie Griffith, Rowland H. Tibbott, Jr., Paul L. Kane, Henry J. Clarke and Randolph Myers, individually and as former directors of Laurel National Bank and Laurel National Bank, Defendants and Third-Party Plaintiffs,

v.

Henry J. CLARKE and Randolph Myers, individually and as Directors of Laurel National Bank, Third-Party Defendants.

Civ. A. No. 83-726.

United States District Court, W.D. Pennsylvania.

June 12, 1985.

P. Christian Hague, James R. Mall, Meyer, Unkovic & Scott, Pittsburgh, Pa., for Overberger's.

James D. Morton, Buchanan & Ingersoll, P.C., Pittsburgh, Pa., for Laurel Bank.

Joseph Katarincic, David Borkovic, Kirkpatrick & Lockhart, Pittsburgh, Pa., for William P. White, Jack M. Calandra, James H. Lyons, James D. Commons, Marjorie Griffith, Rowland H. Tibbott.

David Fawcett, David J. Hickton, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for Paul L. Kane.

John R. McGinley, Grogan, Graffam, McGinley, Solomon & Lucchino, Pittsburgh, Pa., for Henry J. Clarke and Randolph Myers.

Charles B. Jarrett, Jr., Letson, Griffith, Woodall & Lavelle, Pittsburgh, Pa., for BT Financial Corp.

## MEMORANDUM OPINION

TEITELBAUM, Chief Judge.

Plaintiffs, as stockholders of Laurel National Bank (LNB), brought this shareholder derivative suit against directors and officers of LNB. The complaint, as amended, alleged the individual defendants made loans in excess of LNB's lending limit and failed to disclose the excessive loans in proxy statements. Violations of sections 84 and 161(a) of the National Banking Act, 12 U.S.C. §§ 84 and 161(a), and section 14(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n, as well as common law negligence were alleged.

During the pendency of this litigation LNB became a wholly-owned subsidiary of BT Financial Corporation (BT). The acquisition was effected by converting LNB, a federally chartered banking association, into a state bank. The resulting state bank, Laurel Bank (Laurel), was incorporated under the Pennsylvania Banking Code of 1965. Laurel then merged with Interim BT Bank, a wholly-owned subsidiary of BT, with Laurel as the surviving institution. The LNB shareholders received BT stock plus cash for their LNB stock.

As a result of the conversion and merger, Laurel is a wholly-owned subsidiary of BT. The former shareholders of LNB, including the plaintiffs, are now shareholders of BT. Each of the plaintiffs, and a majority of the shareholders of LNB, approved the conversion and merger.

The acquisition of LNB by BT raises the question of who has standing to maintain this action: first, do the plaintiffs have

standing to continue this derivative suit, and if not, may BT be substituted for the plaintiffs.

### 1. *Plaintiffs' standing*

#### a. *Standing under federal and state law*

At the heart of the issue of plaintiffs' standing lie the conflicting standing requirements under federal and state law.

Fed.R.Civ.P. 23.1 provides, in pertinent part:

> In a derivative action brought by one or more shareholders ... to enforce a right of a corporation ... the complaint ... shall allege (1) that the plaintiff was a shareholder ... at the time of the transaction of which he complains or that his share... thereafter devolved on him by operation of law ... The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interest of the shareholders ... similarly situated in enforcing the right of the corporation ...

■ From this rule three ownership requirements are derived: 1) the plaintiff must be a shareholder at the time of suit; 2) the plaintiff must have been a shareholder at the time of the transaction; and 3) the plaintiff must remain a shareholder throughout the pendency of the litigation. The first ownership requirement, that the plaintiff must be a shareholder at the time of suit, is inferred from the statement in Rule 23.1 that the action may be "brought by one or more shareholders". 7A C.A. Wright and A.R. Miller, Federal Practice and Procedure § 1826 at 325 (1972). The second ownership requirement, that the plaintiff must have been a shareholder at the time of the transaction, the contemporaneous ownership rule, is explicitly stated in the Rule. *Id.* at § 1828 at 341. The third ownership requirement, that the plaintiff must remain a shareholder throughout the pendency of the derivative action, is inferred from the statement in Rule 23.1 that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately repre-

sent the interests of the shareholders ... similarly situated in enforcing the right of the corporation." *Lewis v. Chiles,* 719 F.2d 1044, 1047 n. 1 (9th Cir.1983); *Portnoy v. Kawecki Berylco Industries, Inc.,* 607 F.2d 765, 767 (7th Cir.1979).

The individual defendants and BT urge application of Rule 23.1 and argue that plaintiffs' loss of a proprietary interest in LNB requires dismissal of the action. On the other hand, plaintiffs find Pennsylvania law more favorable and urge its application.

Pa.R.Civ.P. 1506(1) provides, in pertinent part:

> In an action to enforce a secondary right brought by one or more stockholders ... of a corporation ... the complaint shall set forth (1) that the plaintiff was a stockholder ... in the corporation ... at the time of the transaction of which he complains or that his stock ... devolved upon him by operation of law from a person who was a stockholder ... at that time.

■ Like its federal counterpart, Rule 1506(1) explicitly requires contemporaneous ownership. Like its federal counterpart, Rule 1506(1) provides that the action may be "brought by one or more stockholders". Although the federal courts have interpreted the identical language in Rule 23.1 as requiring that the plaintiff be a shareholder at the time of suit, the Pennsylvania courts have not found such a requirement in Rule 1506(1). *Fitzpatrick v. Shay,* 314 Pa.Super. 450, 461 A.2d 243 (1983). A fortiori continous ownership of stock throughout the pendency of the derivative action is not required under Pennsylvania law.

Plaintiffs urge the application of Rule 1506(1) and argue that the loss of a proprietary interest in LNB does not affect their standing to maintain this action.

#### b. *Federal claims*

■ Plaintiffs claim violations of the National Banking Act and the Securities Exchange Act of 1934. Standing to assert a derivative claim based on federal law is a question of federal law. *In re Pittsburgh*

*& Lake Erie Railroad Co.,* 543 F.2d 1058, 1067 (3d Cir.1976).

■ As discussed above, Rule 23.1 requires that the plaintiff remain a shareholder throughout the pendency of the derivative action. *Lewis v. Chiles, supra; Lewis v. Knutson,* 699 F.2d 230, 238 (5th Cir.1983); *Portnoy v. Kawecki Berylco Industries, Inc., supra;. Shilling v. Belcher,* 582 F.2d 995, 999 (5th Cir.1978). "[B]ecause a shareholder will receive at least an indirect benefit (in terms of increased shareholder equity) from any corporate recovery, he has an adequate interest in vigorously litigating the claim. A non-shareholder or one who loses his shareholder interest during the course of the litigation may lose any incentive to pursue the litigation adequately." *Portnoy v. Kawecki Berylco Industries, Inc.,* 607 F.2d at 676. A loss of standing has been found when shareholder status was lost through a sale of stock, *Lewis v. Chiles, supra; Shilling v. Belcher, supra,* a reverse stock split, *Lewis v. Knutson, supra,* a cash for stock merger, *Solomon v. Buckley,* 86 F.R.D. 464 (E.D.La.1980), and a stock for stock merger, *Fischer v. CF & I Steel Corp.,* 599 F.Supp. 340 (S.D.N.Y.1984).

■ For these reasons, the plaintiffs no longer have standing to prosecute the alleged violations of the National Banking Act and the Securities Exchange Act of 1934.

#### c. *State claims*

Faced with the prospect that their loss of shareholder status would trigger a loss of standing under federal law, plaintiffs countered that they could drop the non-diverse plaintiffs in order to invoke diversity jurisdiction. Diversity jurisdiction would, plaintiffs contend, require application of state law to the question of standing. As noted, state law does not require that the plaintiff own stock at the time suit is brought or throughout its pendency.

Whether standing to maintain a derivative suit premised on diversity jurisdiction is a question of state or federal law has not been decided in this Circuit. *In re Pittsburgh & Lake Erie Railroad Co.,* 543 F.2d at 1058. The Ninth Circuit has also left the question open. *Lewis v. Chiles,* 719 F.2d at 1048. The Second Circuit has held state law applies. *Drachman v. Harvey,* 453 F.2d 722, 727, 730 (2d Cir.1971). The Fifth Circuit left the question open in *Shilling v. Belcher,* 582 F.2d at 999–1000, but applied federal law without discussion in *Lewis v. Knutson, supra.* A decision from the Eastern District of Pennsylvania applied federal law. *Kuzmickey v. Dunmore Corp.,* 420 F.Supp. 226, 230 n. 9 (E.D.Pa. 1976).

■ In the present case both the claims of common law negligence and breach of fiduciary duty and the claims of violations of federal law rest upon the same allegations of excessive loans and false proxy statements. The state claims are alternate theories of relief to the federal claims. The decision that the plaintiffs lack standing to prosecute the federal claims is therefore dispositive: the plaintiffs also lack standing to prosecute the state claims. This result is reached whether the state claims are before the court under pendent jurisdiction or, by now dropping the non-diverse parties, under diversity jurisdiction. *See In re Pittsburgh & Lake Erie Railroad Co.,* 543 F.2d at 1067.

■ Even if the state claims were viewed as independent of the federal claims, the same result would be reached. The law in this Circuit suggests that Fed. R.Civ.P. 23.1 controls the question of whether a plaintiff must be a shareholder at the time of suit and maintain his shareholder status throughout the pendency of the litigation when a derivative suit is brought in federal court under diversity jurisdiction. Although state law governs the question of who is a shareholder, a term left undefined in federal law, in a derivative suit based on diversity jurisdiction, *Gallup v. Caldwell,* 120 F.2d 90, 93 (3d Cir.1941); when adequacy of representation is required under federal law, but not under state law, federal law controls in a derivative suit based on diversity. *Kuz-*

*mickey v. Dunsmore Corp.*, 420 F.Supp. at 230 n. 9.

Wright and Miller explain that standing in a derivative suit under diversity jurisdiction is multifaceted and different aspects may be controlled by reference to different bodies of law.

> It now appears well settled that the question whether plaintiff is a shareholder within the meaning of Rule 23.1 is determined under the applicable substantive law. Thus, at least as far as diversity cases are concerned ... [the *Erie* doctrine] requires the application of the forum state's law to the issue. This conclusion seems appropriate inasmuch as there does not appear to be any strong federal interest in establishing a uniform federal definition of "shareholder" ... for purposes of derivative suits based on diversity jurisdiction. ·

7A C.A. Wright and A.R. Miller, Federal Practice and Procedure § 1826 at 327–328 (1972). They go on to explain that defining who is a shareholder may be distinguished from the contemporaneous ownership requirement. *Id.* and § 1829 at 354.

Thus, although a shareholder is defined by reference to state law in a derivative action based on diversity, it does not necessarily follow that the entire standing question is controlled by state law. The federal court decisions on loss of standing on loss of shareholder status evidence a strong federal interest in requiring prosecution of a derivative action by a party with an adequate interest in vigorously litigating the claim. *Kuzmickey v. Dunsmore, supra,* characterized the requirement of fair and adequate representation as procedural governed by federal law in a diversity suit.

■ For these reasons, if plaintiffs' claims of common law negligence and breach of fiduciary duty were viewed as independent of their claims of violations of the National Banking Act and the Securities Exchange Act of 1934 so that the decision of loss of standing on the federal claims was not also dispositive of the state claims, Rule 23.1 would still apply to bar plaintiffs from prosecuting the alleged common law negligence and breach of fiduciary duty.

### 2. *BT's standing*

#### a. *Contemporaneous ownership*

Having concluded that plaintiffs lost standing to continue this suit when the LNB stock was acquired by BT, it would follow that BT gained standing when it acquired the LNB stock. However, there remains the question of whether the contemporaneous ownership requirement of Rule 23.1 prevents BT from maintaining this action.

In the present situation Rule 23.1 can operate as a "Catch 22". As noted, Rule 23.1 requires that the plaintiff be a shareholder at the time of suit and maintain this status throughout the litigation. Rule 23.1 also requires that the plaintiff must have been a shareholder at the time of the transaction, the contemporaneous ownership rule. Plaintiffs can no longer maintain the action because they no longer have shareholder status. The individual defendants contend BT cannot maintain the action because it was not a shareholder at the time of the transaction. If this is so, no party can maintain the action.

No court has approved such a result. In *Lewis v. Chiles* the court observed that a suit by a corporation which acquires a derivative cause of action as one of the assets of a purchased corporation would violate the contemporaneous ownership requirement of Rule 23.1, 719 F.2d at 1048 n. 4, but also observed that only the acquiring corporation had an interest in pursuing the claims. *Id.* at 1047. Without discussion of the problem, other courts have assumed that the acquiring corporation or its shareholders can maintain the action. *Solomon v. Buckley, supra; Fischer v. CF & I Steel Corp., supra.*

■ For these reasons, the contemporaneous ownership requirement of Rule 23.1 does not prevent BT from being substituted as plaintiff.

Plaintiffs assert three other reasons why BT should not be substituted as plaintiff: 1) BT is estopped from seeking substitution as plaintiff; 2) substitution of BT as plaintiff will delay this case; and 3) BT is an inadequate representative of LNB's former shareholders.

### b. *Estoppel*

■ Plaintiffs assert BT is estopped from seeking substitution as plaintiff because of representations made in its prospectus/proxy statement soliciting approval of the proposed merger. The prospectus/proxy statement advised the shareholders that:

No liability of [LNB] or of its shareholders, directors or officers will be affected nor will any claim on any property of [LNB] be impaired by the conversion, including but not limited to those described under "Business and Properties of [LNB]—Legal Proceedings" herein. Any lien existing or action pending by or against [LNB] may be prosecuted to judgment as if the conversion did not take place or resulting Laurel may be substituted.

Plaintiffs contend BT thereby represented that the plaintiffs would continue to prosecute this action to judgment and that they relied upon this representation in consenting to the merger.

The statements made by BT in its prospectus/proxy statement contain no representations that estop BT from seeking substitution as the plaintiff. BT merely recited, almost word for word, the nonabatement provisions of the applicable merger sections of the Pennsylvania Banking Code of 1965. BT advised the shareholders that "No liability of [LNB] or of its shareholders, directors or officers will be affected ... by the conversion..." 7 P.S. § 1606(f) states "No liability of any party to the plan or of its shareholders, directors, trustees or officers shall be affected ... by the merger or consolidation." Similarly BT stated that "Any ... action pending by or against [LNB] may be prosecuted to judgment as if the conversion did not take place or resulting Laurel may be substituted." 7 P.S.

§ 1606(f) states "Any ... action pending by or against any party to the plan may be prosecuted to judgment as if the merger or consolidation had not taken place or the resulting institution may be substituted in its place." The language on which plaintiffs claim reliance concerns the nonabatement of claims and liabilities on merger or consolidation; it cannot reasonably be construed as representing that the plaintiffs would continue to have standing in this action.

Moreover, this lawsuit is specifically described in the prospectus/proxy statement and the uncertain effect of the merger upon the continuation of the suit is identified.

As discussed earlier under "Business and Properties of [LNB]—Legal Proceedings," ... [LNB] and certain of its present and former directors are defendants in a shareholder derivative action, both of which relate to loan losses incurred by [LNB] on a series of loans made during 1975 through 1978.

While neither [LNB] nor any of its directors or officers will be expressly relieved by reason of the Conversion or the Merger of any possible liability they may have in connection with the foregoing matters, the Conversion and the Merger may have an effect on the continuation of the shareholder derivative action. It is not, however, possible for BT or [LNB] to predict at this time what effect the Conversion and the Merger may have, and there is no assurance that these matters will be resolved or that any resolution will be on terms favorable to [LNB], its directors or officers.

These specific statements render any reliance on the general statements taken from the statute unjustified.

For these reasons, BT is not estopped from seeking substitution as plaintiff.

### c. *Delay*

■ Plaintiffs next assert substitution of BT as plaintiff will delay the trial of this case and cause additional expense to all involved. This is undoubtedly so but it is

not a sufficient ground to deny BT substitution as plaintiff.

### d. *Adequate representation*

■■■ Plaintiffs next assert BT may not adequately represent the former shareholders of LNB if substituted as plaintiff. Plaintiffs contend that the individual defendants entered into the merger with BT in order to exculpate themselves from liability, and that several of these defendants continue to serve as directors of Laurel. From this plaintiffs argue BT is likely to be hostile, or at best apathetic, to the claims asserted on behalf of LNB. Plaintiffs contend a BT investigation committee, like its LNB predecessor, will be biased and a BT settlement proposal, like its LNB predecessor, will have as its primary purpose the release of the individual defendants from liability.

A similar argument was rejected in *Lewis v. Chiles, supra.* There plaintiff brought a derivative action on behalf of Fred Meyer, Inc. During the pendency of the suit the Fred Meyer shareholders approved the sale of the corporation's assets. The plaintiff argued he should be permitted to continue the derivative suit because "the officers and directors of Fred Meyer, Inc. took advantage of the sale of the corporation's assets as a means of insulating themselves from liability in his suit." 719 F.2d at 1048. Under the terms of the purchase agreement nine officers, five of whom were also directors, were retained by the acquiring company which further agreed to indemnify the officers and directors for defense costs and any liability incurred as a result of the derivative suit. In spite of this the court held that "after the sale only [the acquiring companies] ... could have had an interest in pursuing the claims." 719 F.2d at 1047.

Neither the plaintiffs nor any other former LNB shareholder has challenged the merger transaction. This fact distinguishes the case of *Miller v. Steinbach,* 268 F.Supp. 255 (S.D.N.Y.1967) relied upon by the plaintiffs.

For these reasons, the allegations of inadequate representation by BT are insufficient grounds to deny BT substitution as plaintiff.

### e. *Counsel fees*

Finally plaintiffs contend substitution of BT should be conditioned on payment of plaintiffs' counsel fees. First, plaintiffs contend that "but for their filing of this action a merger with Mid-State Bancorp would likely have been consummated for far less than the amount paid by BT." On January 12, 1983 a letter of intent was signed to merge LNB into Mid-State Bancorp for approximately $36 per share. On March 25, 1983 this action was filed. On January 1, 1985 LNB merged with BT for approximately $66 per share. Multiplying the $30 per share price differential times the 245,000 outstanding LNB shares, the additional amount realized as a result of the BT merger over that which would have been realized had the Mid-State merger gone through is $7,350,000. Plaintiffs contend this seven million dollars shared by former LNB shareholders is a substantial benefit conferred by the plaintiffs because of filing this suit.

■■■ Second, plaintiffs contend this case represents a valuable asset to Laurel and/or BT for which plaintiffs should be compensated.

Counsel fees and expenses incurred in litigation are not ordinarily recoverable in the absence of a statute or contract authorizing them. There is, however, a well established exception in situations where a party has by his own effort and expense created or preserved a fund which benefits others. In such circumstances, it would be unjust to require one party to bear the entire expense which necessarily results in a benefit to a large class of persons. Although the type of cases contemplated under this doctrine are ordinarily class actions or shareholders' derivative suits establishing a fund in which others can participate, such actions are not essential for recovery if "a fund is for all practical purposes created for the benefit of others."

*Kahan v. Rosenstiel,* 424 F.2d 161, 165–166 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970) (citations omitted). Plaintiffs must prove a causal connection between their suit and the benefit conferred. *Id.*

■ The plaintiffs have not shown that they conferred a substantial benefit on the former LNB shareholders. Since this suit did not challenge the Mid-State merger proposal, it is difficult to infer that the filing of the suit caused that merger to fall through. Further, there is no evidence that the pendency of this suit had any effect on the price BT paid for the LNB stock.

■ Even if the plaintiffs could establish a causal connection between this suit and the more favorable BT merger, another problem would arise. The reason for permitting a plaintiff in a derivative action to recover counsel fees is that all those who benefit from the litigation should share the costs proportionately. *Kahan v. Rosenstiel,* 424 F.2d at 166–167. The beneficiaries of the additional seven million dollars realized through the BT merger were the plaintiffs and the other former shareholders of LNB. But plaintiffs are not looking to the other former LNB shareholders for reimbursement; rather plaintiffs look to BT, the party which paid the additional monies.

Also, plaintiffs have not shown that they conferred a substantial benefit on Laurel and/or BT. Plaintiffs contend this suit is a valuable asset to Laurel and/or BT. However, plaintiffs have also argued that BT will not actively pursue this suit, which would suggest the suit has little value.

For all the foregoing reasons BT shall be substituted for the present plaintiffs pursuant to Fed.R.Civ.P. 25(c). An appropriate order shall be entered.

### ORDER

AND NOW June 12, 1985 in accordance with the foregoing memorandum opinion, IT IS HEREBY ORDERED that BT Financial is substituted for William F. and Mary L. Overberger, James E. and Joan B. Overberger, and Charles G. Overberger, trustee, as plaintiff in the above captioned action.