William J. MERTENS, et al., Plaintiffs,

v.

**KAISER STEEL RETIREMENT PLAN,
et al., Defendants.**

**No. C–88–3587 MHP.**

United States District Court,
N.D. California.

July 16, 1990.

Jeffrey Lewis, Alfred H. Sigman, Sigman & Lewis, Andrew T. Sinclair, Oakland, Cal., for plaintiffs.

George A. Malloch, Michael St. Peter, Richard G. Avila, Kaplan, Russin, Vecchi & Eytan, San Francisco, Cal., for Gerald G. Ferro.

## OPINION

PATEL, District Judge.

Plaintiffs bring this action for declaratory, injunctive and monetary relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. The parties are now before the

court on defendants' motion for summary judgment on res judicata grounds.

## BACKGROUND

William Mertens and other plaintiffs filed this action on September 9, 1988 and added class allegations on June 23, 1989. The complaint alleges breaches of fiduciary duty by members of the Investment Committee of the now-terminated Kaiser Steel Retirement Plan ("Investment Committee"). According to plaintiffs, who were participants in the Kaiser Steel Retirement Plan ("Plan"), the Investment Committee members failed to insure adequate funding of the Plan and an adequate funding policy and thus breached their fiduciary duties. The court's earlier orders in this matter covered these circumstances in greater detail than shall be done here.

In May 1986, twenty-four Plan beneficiaries filed an action alleging breaches of fiduciary duty by several entities and individuals, including the Kaiser Steel Retirement Plan and the Investment Committee members named as defendants in the present action. That action, denominated *Horan v. Kaiser Steel Retirement Plan,* CV 86–4424 PAR (Bx), was removed to federal court under ERISA jurisdiction. The *Horan* plaintiffs sought declaratory and injunctive relief in the form of an order that the fiduciaries purchase an annuity for each of the plaintiffs. On August 31, 1989 the United States District Court for the Central District of California granted summary judgment in favor of the defendants in *Horan* and issued a memorandum and order. Defendants in the present action now argue that the *Horan* claim, as reflected in the complaint, the briefs and evidence of the parties, and the court's memorandum and order must serve to bar the *Mertens* litigation on res judicata and collateral estoppel grounds.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

■ The court's function, however, is not to make credibility determinations. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.,* 809 F.2d at 631.

## DISCUSSION

■ The doctrine of res judicata bars re-litigation by parties or their privies of any claim brought to final judgment on the merits. *United States v. ITT Rayonier, Inc.,* 627 F.2d 996 (9th Cir.1980) (citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). The parties do not dispute that the *Horan* summary judgment order was a final judgment on the merits. They concentrate their energies instead on issues of identity of parties and claims.

■ Under the identity of parties requirement, an earlier action does not have res judicata effect on a later action unless the affected parties to the second action are the same as, or are in privity with, the parties to the first action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

The defendants in *Mertens* are indisputably the identical parties as those in *Horan* since they were also named defendants in that action. There is also no dispute that a subset of the *Mertens* class members were

*Horan* plaintiffs and are thus the identical parties.[1] However defendants also contend that all other class members, including the individual plaintiffs, though not parties to the *Horan* action, are in privity with the *Horan* plaintiffs. The defendants argue that the Plan is the real party in interest as plaintiff in both suits or that the *Horan* plaintiffs were the virtual representatives of the *Mertens* plaintiffs.

■ According to the defendants, the Plan is the real party in interest in both *Horan* and the present action since the central cause of action in both is based on breach of ERISA-prescribed fiduciary duties. The defendants correctly note that a civil action alleging a fiduciary's liability under ERISA section 409 ("section 409 action"), codified at 29 U.S.C. section 1109, must be brought on behalf of the benefit plan, since no individual relief is available. In *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985), the Supreme Court held that, while plan beneficiaries have a statutory right to bring an action for breach of fiduciary duty, any recovery inures to the benefit of the plan as a whole; the action is thus brought in a representative capacity.

■ Normally a party who litigates as a representative is in privity with those she represents, *See, e.g., Cramer v. General Tel. & Electronics Corp.,* 582 F.2d 259, 267 (3d Cir.1978). Defendants argue that the same must be true here. However, the *Massachusetts Mutual* court did not elaborate on section 409 suits, leaving such particulars as what protections are to be afforded to absent plan participants, beneficiaries and the plan itself to be formulated by the lower courts. This court's search of post-*Massachusetts Mutual* jurisprudence discloses few cases dealing with the manner in which these suits shall be handled to effectuate their representative or derivative nature.

Although the Ninth Circuit has recognized that section 409 suits must be brought on behalf of benefit plans, it has not established the necessary mechanics. *See, e.g., Sokol v. Bernstein,* 803 F.2d 532, 536 (9th Cir.1986) (no right of action under section 409 for "beneficiary *qua* beneficiary."). The few decisions which have addressed the characteristics of section 409 suits after *Massachusetts Mutual* are discussed below.

In developing the necessary procedural protections, this court must be mindful of the congressional goals underlying enactment of ERISA. One of the principal goals was to protect benefit plan participants and beneficiaries by establishing standards for fiduciary conduct and by providing ready access to the federal courts. 29 U.S.C. § 1001(b). Any procedures that are adopted to amplify section 409 suits must reconcile the preclusive effect of representative actions with that animating purpose. Useful paradigms for representative actions are available from two sources: the common law of trusts and shareholder derivative actions.

## I.   *Trust Law Based Protections*

■ Congress intended that courts " 'draw on principles of traditional trust law' in formulating remedies for violations of ERISA's fiduciary duty standards." *Nieto v. Ecker,* 845 F.2d 868, 872 (9th Cir.1988) (quoting *Donovan v. Mazzola,* 716 F.2d 1226, 1231, 1235 (9th Cir.1983). Since trust law is the appropriate source for guidance in determining remedies in fiduciary duty actions, it follows that such law is appropriate for determining what procedural safeguards should be afforded absent parties in those actions.

■ When a trust beneficiary brings a suit which affects more than her own interests, or which affects the corpus of the trust, all other beneficiaries are generally

---

**1.** The class in this action is described as: "[a]ll persons, other than defendants, who are, or have been, participants in or beneficiaries of the Kaiser Steel Retirement Plan, and whose Plan benefits were eliminated or reduced as a consequence of the breaches of fiduciary duty alleged herein." Amended Complaint at 6. It is clear that the plaintiffs in *Horan* are included in this class. However, the court leaves for another day whether the other elements of res judicata are satisfied as to the *Horan* plaintiffs.

held to be necessary parties who must be joined. *See, e.g., Thornton v. Evans,* 692 F.2d 1064, 1073 (7th Cir.1982) (referring with approval to district court's reliance in ERISA action on "the common law principle that all beneficiaries are necessary parties in an action to restore the trust corpus."); *Auslen v. Superior Court,* 58 Cal.2d 820, 824, 27 Cal.Rptr. 8, 377 P.2d 72 (1962) (superior court lacked jurisdiction over trust due to absence of some of the beneficiaries); G. Bogert, *Trusts and Trustees,* § 871 at 137 (West 1982).

In ERISA actions, the typically large numbers of participants and beneficiaries in most plans will render joinder impractical. Under those circumstances in common law trust actions, a class action may be maintained. *Id.* at 130. In section 409 actions plan participants and beneficiaries lack the direct right to relief typically held by class members, since the actions are brought on behalf of benefit plans. Nevertheless, they retain vital interests in those suits, since any equitable or monetary relief awarded to the plan would ultimately benefit them. Those interests could be considerable where the viability of a retirement plan, with its years of income for retirees, hangs in the balance. For retirees and their beneficiaries, the plan may represent their single largest asset. For health and welfare plan participants and beneficiaries, the plan may be all that stands between them and devastating medical bills.

As the *Massachusetts Mutual* Court noted, plan participants and beneficiaries share a "common interest ... in the financial integrity of the plan." *Massachusetts Mutual,* 473 U.S. at 142 n. 9, 105 S.Ct. at 3090 n. 9. In the same note the Supreme Court enumerated the four classes of persons who are entitled by statute to enforce fiduciary obligations under section 409. The Court observed that by including the Secretary of Labor in this group, Congress intended that "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan *as a whole.*" *Id.* (emphasis added). This language also suggests the obligations of a party-plaintiff to the plan and to its participants and bene-

ficiaries. Where the Secretary of Labor initiates the action it is presumed the Secretary will act in the best interest of the plan and those who are entitled to share in its benefits. Placing this same responsibility on one or more individuals without the protections of a class action or some similar procedural device could hardly measure up to the statutory expectations described by the Supreme Court in *Massachusetts Mutual.*

■ In order to achieve these ERISA objectives, the notice normally accorded to absent class members under Federal Rule of Civil Procedure 23(c)(2) should be available to absent plan participants and beneficiaries in section 409 actions. Although no opt-out opportunity can be granted, since the right to recovery belongs to the benefits plan, notice of the action would at least afford absent parties the opportunity to consider intervention in order to safeguard their derivative interests. Where absent parties will not only be affected, but may be bound by the litigation, they should receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2).

This court is not the first to recognize the need for class action-type protections in section 409 suits. The Southern District of New York allowed the litigation of a breach of fiduciary duty action by a class of plaintiff beneficiaries in *Diduck v. Kaszycki & Sons Contractors, Inc.,* 737 F.Supp. 792 (S.D.N.Y.1990) (certifying class under Federal Rule of Civil Procedure 23(b)(1)(B) with beneficiary as class representative in section 409 action against plan trustee).

Moreover, the Seventh Circuit addressed the issue in *Thornton v. Evans.* The *Thornton* plaintiffs were plan participants and beneficiaries who sued individuals alleged to be co-conspirators with plan fiduciaries in a scheme to defraud the plan. The Seventh Circuit ruled that:

plaintiffs, who seek to recover damages from non-fiduciary defendants for their role in a conspiracy directed against the

Fund as a whole ... must sue either as representatives of the Fund in a derivative action or as representatives of the beneficiaries in a class action.

*Id.* at 1080. The court noted that the safeguards of Federal Rules of Civil Procedure 23 and 23.1, as well as the ability to consolidate actions, can avoid multiple suits while providing a forum for fraud, mismanagement and breach of fiduciary duty claims. Such claims affect the plan as a whole and implicate "the interest of every beneficiary."[2] *Id.* (footnote omitted).

The Eleventh Circuit has also provided some support for the class action approach to section 409 suits. Although the court did not directly address the class action issue, it implicitly supported its use in *Deak v. Masters, Mates and Pilots Pension Plan*, 821 F.2d 572 (11th Cir.1987) *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). The *Deak* court affirmed a decision in favor of a class of 2,000 retirement plan participants who had argued that the plan trustees had improperly amended the plan.

## II. *Shareholder Derivative Action Protections*

■ As the Seventh Circuit observed in *Thornton*, the derivative suit is also a use-ful source from which to engraft procedural safeguards onto section 409 actions.[3] Certain aspects of that action are particularly appropriate.

### A. *Requirement of Demand on the Trustee*

■ In the ERISA context, the requirement of a demand on the corporation translates to a requirement that the prospective litigant petition the "named fiduciary" or trustee of the benefit plan under 29 U.S.C. sections 1102 and 1103 to institute the suit.[4] There is a clear protective benefit in adverting the trustee to the potential need to seek redress for injuries to the plan. If there is an independent trustee, that individual may be the most vigorous advocate for the plan—possibly possessing legal resources greater than those of individual beneficiaries or plan participants.

### B. *Realignment of the Parties*

■ The potential realignment of parties in shareholder derivative suits according to their interests is another salutary device well-suited for section 409 actions. In derivative actions, especially where jurisdiction is not based upon diversity, unless the corporate directors have shown an antagonism towards the plain-

---

**2.** Although *Thornton* was a suit against third parties, rather than against plan fiduciaries, the interests of plan participants and beneficiaries are the same in either case, since the injuries to the plan as a whole are the same. There is no logical reason to afford greater safeguards in the first case than in the second.

In fact, at least one district court within the Seventh Circuit has since certified a class in a suit by plan participants against trustees for breach of fiduciary duty. In *Unitis v. JFC Acquisition Co.*, 643 F.Supp. 454 (N.D.Ill.1986) plaintiffs' claims included two counts under ERISA: (1) alleged violation of ERISA section 404's requirement that a fiduciary discharge its duties in accordance with plan documents and (2) alleged breach of fiduciary duty by plan trustees who intended to use residual trust assets for the company's benefit. The district court certified the action after finding that the requirements of Federal Rules 23(a) and 23(b)(3) were met. *Id.* at 463.

**3.** The Seventh Circuit is not the only appellate court to rule on the use of the derivative suit in section 409 actions against plan fiduciaries. Al-though it has not yet reached the issue directly, the Third Circuit has approved the use of the derivative suit in actions against employers predicated on breaches of fiduciary duty by plan trustees. In *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir.) *cert. denied*, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986), the court held that a derivative action against employers for failure to pay into a plan could go forward as long as the plaintiffs established a predicate breach of fiduciary duty by plan trustees.

**4.** Under 29 U.S.C. section 1102, every employee benefit plan must set out in its organic instrument the names of on or more "named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Under 29 U.S.C. section 1103, the organic instrument must also name a trustee, who may also be a named fiduciary, who "shall have exclusive authority and discretion to manage and control the assets of the plan" except as limited by a named fiduciary or by appointed investment managers. 29 U.S.C. § 1103(a), (b).

tiff's action, the corporation should be aligned as a plaintiff. *See, e.g., In re Penn Central Securities Litigation*, 335 F.Supp. 1026, 1041 (E.D.Pa.1971). Since the duty to realign continues throughout the pendency of the action, subsequent changes of those in control of the corporation may lead to its realignment as a party-plaintiff and the grant of exclusive control over the action. *See, e.g., Solomon v. Buckley*, 86 F.R.D. 464 (E.D.La.1980) (district court granted surviving company in merger the right to take over prosecution of claims directly, after magistrate had denied, as premature, a realignment motion by predecessor corporation with reconstituted board); *Penn Central Securities Litigation*, 335 F.Supp. at 1042 (realignment and exclusive control granted where new directors had no ties to old management and indicated desire and ability to prosecute claim).

In the ERISA context, realignment of the benefits plan as a party-plaintiff would be appropriate if, after institution of the section 409 action, change of statutory trustees occurred, for example, if the Pension Benefit Guaranty Corporation ("PBGC") became trustee.[5] The new trustee would take over the action with the plan becoming plaintiff and pursuing its own action where it can finally act as a vigorous advocate on its own behalf.

### C. Notice Requirements

Although the above aspects of the derivative suit are adaptable to the ERISA setting, other aspects are not. Prototypical shareholder derivative actions are bereft of notice provisions which are imperative in section 409 suits in order to safeguard the legitimate interests of absent plan partici-

pants and beneficiaries. Federal Rule of Civil Procedure 23.1, which addresses derivative actions, only requires that notice of the action be given to absent shareholders when the action is compromised or dismissed. While adequate in the context of derivative suits, this rule is insufficient in the ERISA environment. The notice provisions set out above in Section I offer better protection for absent parties in section 409 actions.

### III. Protections for Absent Parties in the Horan Action

The third amended complaint in the *Horan* action alleged breaches of fiduciary duty. Those allegations were necessarily brought on behalf of the benefit plan. Ordinarily, if the protections set out above were available for absent parties, such a suit would have preclusive effect. However, those protections were not present in *Horan*.

There is no evidence that the court considered realigning the parties at any point during the litigation. This is a significant omission, given the history of the *Horan* case. Although the Plan was viable when the action was instituted in 1986, it was terminated during the pendency of the suit, in February 1987. The Plan then came under the trusteeship of the PBGC by court order and was thus no longer antagonistic to the interests of the beneficiaries and participants. *In re Kaiser Steel Corp.*, No. 87-B-01552-E (Bankr.D.Colo. Feb. 27, 1987) (order approving agreement for appointment of trustee and termination of plan) (order attached to PBGC Opp. Mem., Breen Dec., Ex. A). Realignment may well have resulted in the PBGC assuming direct responsibility for the action.[6]

---

**5.** When a plan is unable to pay benefits when due, the PBGC may institute proceedings to terminate the plan and to have a trustee appointed. 29 U.S.C. § 1342. That trustee, which may be the PBGC, is empowered to "commence, prosecute or defend on behalf of the plan any suit involving the plan...." 29 U.S.C. § 1342(d)(1)(B)(iv).

**6.** The court is aware of defendants' assertion that its counsel contacted the PBGC by telephone during the pendency of *Horan* but the PBGC refused to join the action. *See,* Molander

Dec. in *Horan*, PBGC Opp.Mem.Exh.C. This evidence did not come before the *Horan* court until the PBGC sought to join the action on September 15, 1989 by filing a motion to vacate the court's order granting summary judgment. The court denied the motion, ruling that jurisdiction over the action had passed to the appellate court. *Horan v. Kaiser Steel Retirement Plan*, No. CV 86-4424 PAR (Bx) (order denying motion to vacate judgment). It is not clear what effect direct court involvement (rather than phone calls from defense counsel) would

As a basis for preclusion, *Horan* presents other problems. The Plan was represented throughout the entire proceedings by the same counsel as other defendants, some of whom were charged as breaching trustees. That is an unacceptable conflict of interest. Defendant trustees in fiduciary duty actions alleging injury to the plan obviously have interests potentially adverse to those of the plan itself. In common law trust actions, trustees are not allowed to represent trust funds where that conflict exists. G. Bogert, *Trusts and Trustees*, § 871 at 137–141.

■ Indeed, it appears, after a careful reading of the statute, that the plan should not be named as a defendant. Section 409 renders the action a personal one against the fiduciary. 29 U.S.C. § 1109(a). Since a section 409 action is one for a breach of the fiduciary's duty to the plan, the plan, if a party at all, is properly a plaintiff. However, this must be rationalized with the civil enforcement section, section 502(a)(2), codified at 29 U.S.C. section 1132(a)(2), which enumerates only the Secretary of Labor, a plan participant, beneficiary or fiduciary as those who may bring a section 409 action. It should be noted, for example, that the parties in *Massachusetts Mutual* were the plaintiff-beneficiary and the defendant-administrator (who was a fiduciary as defined by ERISA). The plans themselves were not parties.[7]

Finally, no notice of the *Horan* action was sent to absent plan participants or beneficiaries. The serious impairment of

their interests without notice should not operate to bar their claims.

Since the proper alignment of the parties, the presence of the Plan as a defendant and the interests of absent parties were not considered in the *Horan* action, this court can not give that holding preclusive effect.

CONCLUSION

For the foregoing reasons, the court DENIES defendants' motion to dismiss the plaintiffs' complaint.

In this action, unlike in *Horan*, plaintiffs attempt to proceed by way of a class action. It appears to this court that that is the best means for asserting the "common interest" of the participants or beneficiaries and the best interest of the Plan. Therefore, the court will proceed with the action by way of the class certification motion. At that time the effect of the *Horan* judgment on those class members who were individual plaintiffs in *Horan* will be addressed. The court will also then address the procedures to be implemented, including modification, if any, of class action procedures.

Also, in accordance with this court's discussion, the Plan is hereby DISMISSED as defendant.

Since the issues discussed herein are matters of first impression generally, and particularly in this circuit, the court intends to invoke 28 U.S.C. § 1292(b) in order to certify the matter to the Ninth Circuit Court of Appeals. This also seems appropriate since *Horan* is presently on appeal and the Ninth Circuit will have an opportu-

have had on the PBGC's willingness to litigate the suit. In any event, neither the realignment issue, nor the PBGC's proper role as Plan trustee, were ever fully addressed by the court.

7. The issue of what parties are empowered to bring section 409 actions has divided the circuits. Although the Ninth Circuit has not yet held that a plan may bring such an action, it has ruled that the statutory list is not exclusive. *Fentron Indus. v. Nat'l Shopmen Pens. Fund*, 674 F.2d 1300, 1305 (9th Cir.1982) ("There is nothing in the legislative history [of section 502] to suggest ... that the list of parties empowered to sue under this section is exclusive") (holding that employers have standing to sue).

The other circuits which have considered the issue are split. *Compare Pressroom Unions Printers Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 (2d Cir.) (section 502 is exclusive, so plan cannot sue), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); *Northeast Dept. ILGWU Fund v. Teamsters Local 229 Welfare Fund*, 764 F.2d 147, 153 (3d Cir.1985) (same); *with Peoria Union Stock Yards v. Penn. Mut. Life Ins.*, 698 F.2d 320, 326 (7th Cir.1983) ("ERISA confers on pension plans standing to sue for breach of fiduciary obligations."); *but see Mutual Life Ins. Co. v. Yampol*, 840 F.2d 421, 423 n. 2 (7th Cir.1988) (criticizing *Peoria* as "dicta without analysis.").

nity to review both actions in light of the above discussion.

The parties are directed to show cause within fourteen (14) days of the issuance of this order why this issue should not be certified. Memoranda shall not exceed five (5) pages.

IT IS SO ORDERED.