William F. DEAK, et al.,
Plaintiffs-Appellees,
Cross-Appellants,

v.

MASTERS, MATES AND PILOTS PENSION PLAN, et al., Defendant-Appellants, Cross-Appellees.

No. 84–3651.

United States Court of Appeals,
Eleventh Circuit.

July 15, 1987.

---

MM & P Pension Plan, Frank E. Hamilton, III, Tampa, Fla., for defendant-appellants, cross-appellees.

James E. Thompson, James J. Cusack, John W. Robinson, IV, Tampa, Fla., David N. Dittmar, Weirton, W.Va., Joshua M. Morse, III, Tallahassee, Fla., for plaintiffs-appellees, cross-appellants.

---

\* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

**1.** The pre–1976 Retirement Defined rule in Article II–A, Section 13, of the Plan stated:

Before HILL, Circuit Judge, HENDERSON\* and BROWN\*\*, Senior Circuit Judges.

JOHN R. BROWN, Senior Circuit Judge:

*Introduction*

Captain Deak brought this class action on behalf of 2,000 participants in the Masters, Mates and Pilots Pension Plan (Plan) under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. §§ 1001–1461. The District Court determined that the Trustees adopted Amendment 46 for the primary purpose of benefitting the MM & P Union and therefore breached their fiduciary duty under ERISA to act in the sole and exclusive interest of the participants and beneficiaries of the Plan.

The central issue on this appeal is whether the Trustees' actions were arbitrary and capricious in amending the Plan so that the length of time retirement benefits are suspended when a retiree becomes re-employed depends on whether the re-employment is with a contributing or non-contributing employer.

We affirm the District Court's holding that Amendment 46 violates ERISA because its discriminatory effect is arbitrary and capricious and the Trustees breached their fiduciary duty of loyalty to the Plan beneficiaries when they adopted the amendment.

*The Trustees' Actions*

The MM & P Pension Plan originally suspended retirement benefits for the period of re-employment plus six months.[1] In December 1975, in apparent anticipation of

a. To be considered retired, a person must withdraw completely from any further employment in any capacity in the maritime industry ...

b. If a Pensioner works in employment forbidden by this section,
   1. He shall not be entitled to pension benefits for any month of such employment and for six additional months.

the provisions of ERISA due to become effective on January 1, 1976, the Trustees adopted several amendments to the Plan.

■ Amendment 42,[2] which is not contested in this appeal, changed the terminology in the Plan to prevent confusion with the new terminology used in ERISA. It changed the terminology in the Plan from "Normal Pension" to "Regular Pension" and added a definition for "Normal Retirement Age" which is identical to the definition used in ERISA. Amendment 46[3] revised the "Retirement Defined Rule" regarding the suspension of pension benefits during periods of re-employment. Following this amendment, pension benefits of retirees who become re-employed with non-contributing employers[4] are suspended for a longer period of time than those of retirees who become re-employed with contributing employers.[5] Prior to Amendment 46, retirees who accepted re-employment within the industry all had their pensions suspended for the same length of time regardless of whether their re-employment was with a contributing or non-contributing employer. Thus, the effect of Amendment 46 is to suspend benefits longer if a retiree accepts employment with a company who does not have a collective bargaining agreement with the MM & P Union.

Captain Deak contends that the Trustees enacted Amendment 46 for the sole purpose of benefitting the Union and thereby violated their fiduciary duties under ERISA. The Trustees, on the other hand,

---

2. Following Amendment 42, the Retirement Defined Rule states in pertinent part:

[Article I,] Section 13. 'Normal Retirement Age' shall mean the age of 65, or, if later, the age of the Participant on the tenth anniversary of his participation.

\* \* \* \* \* \*

All references in the Rules and Regulations to 'Normal Pension' shall be changed to read 'Regular Pension.'

3. Amendment 46 modified subparagraph b of Section 13, Article II–A, of the Plan to read:

b. If a Pensioner works in employment forbidden by that Section,

1. He shall not be entitled to pension benefits for any month of such employment and for six additional months, provided that the additional six month period shall not extend beyond his Normal Retirement Age, as defined in Article I, Section 13; provided further however, that if such employment is in the capacity of a Licensed Deck Officer on a U.S. flag ocean going vessel employed by a company which is not a participant in the M.M. & P. Pension Plan ... then the Pensioner shall not be entitled to pension benefits for any months prior to such Pensioner reaching his Normal Retirement Age, as defined in Article I, Section 13.

4. A contributing employer was one who hired members of the MM & P Union and thus contributed to the MM & P Pension Plan on their behalf.

5. ERISA prohibits the forfeiture of vested benefit payments but expressly permits Trustees to suspend vested benefit payments during periods of re-employment so long as the suspension does not affect the retiree's entitlement to normal retirement benefits upon attaining normal retirement age. ERISA § 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B); Fine v. Semet, 699 F.2d 1091, 1093 (11th Cir.1983). See also Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032, 1041 (2d Cir.1985), cert. denied, — U.S. ——, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986) (interpreting a similar amendment to the MM & P Pension Plan).

Captain Deak contends that he had already attained normal retirement age under the previous benefit plan and, therefore, this suspension violated 29 U.S.C. § 1053(a)(3)(B) as interpreted by 29 C.F.R. § 2530.203–3(a). This argument fails because it misinterprets the phrase "Normal Retirement Age" as it is used in the Code of Federal Regulations.

Prior to 1976, the MM & P Pension Plan provided for normal retirement upon the completion of twenty years of service with the Union. It was not until 1976 that ERISA incorporated normal retirement age as a term of art. In light of the use of normal retirement age in ERISA, the MM & P Pension Plan was amended to eliminate any confusion between the use of "Normal Retirement Age" under ERISA and "Normal Retirement Age" under the Plan. See Amendment 42, supra, n. 2. Normal retirement age as defined by the MM & P Pension Plan is the later of age 65 or the tenth anniversary of employment. Therefore, a suspension of benefits due to re-employment does not itself violate ERISA. Captain Deak claims in his cross-appeal that he had reached normal retirement age by serving twenty years. The earlier Plan's provision for retirement with full pay after twenty years of service merely provides for vesting of the pension. Captain Deak's pension was fully vested and cannot be reduced, but it can be suspended. See Johnson v. Franco, 727 F.2d 442, 445 (5th Cir.1984); Fine v. Semet, 699 F.2d 1091, 1093 (11th Cir.1983); Hernandez v. Southern Nevada Culinary and Bartenders Pension Trust, 662 F.2d 617, 619–20 (9th Cir.1981).

argued before both this Court and the District Court that the primary purpose of Amendment 46 was to enhance the financial integrity of the Plan. According to the Trustees, the enhanced suspension for re-employment with non-contributing employers would induce steamship companies who hire non-MM & P employees, or non-Union employees to participate in the Plan in order to gain access to experienced licensed deck officers. Without this Amendment, the Trustees contend that there would be no incentive to use MM & P personnel. With no incentive to hire MM & P personnel, the steamship companies would hire non-MM & P employees and would stop contributing to the Plan. With no contributions, the Plan would be unfunded and unable to pay pensions that are already accrued and owed.

The District Court heard conflicting evidence on the Trustees' reasons behind Amendment 46. Despite the Trustees' compelling contentions, the District Court concluded that the amendment was for the primary benefit of the MM & P Union and not the Plan's participants and beneficiaries:

> At trial and throughout their brief, the Defendants attempted to portray Amendment No. 46 as a rational and even necessary measure designed to protect the financial integrity of the Plan from the adverse consequences of certain developments in the maritime industry and the weakening financial status of some contributing employers.... [The Trustees argued that b]ecause the employment of other than MM & P Pension Plan personnel on [new, technologically advanced] ships would result in a loss of contributions to the Plan, Amendment No. 46 was adopted to encourage new owners and employers to seek MM & P Pension Plan personnel. The amendment would supposedly attract the new employers to

MM & P Pension Plan members by discouraging the most experienced pensioners from seeking employment with non-contributing employers through the mechanism of a harsher penalty for employment with non-contributory employers than for employment with contributing ones.... *The Defendants' after-the-fact explanations offered at trial concerning their motivations for the adoption of Amendment No. 46 simply do not mesh with the bulk of the evidence and inferences indicative of their intentions at the time of actual passage.*

*Deak v. MM & P Pension Plan*, No. 84–3651, unpublished slip op. at 15–16 (M.D. Fla. June 5, 1985) (emphasis added).

■ The District Court's fact finding that the Trustees enacted Amendment 46 for the primary purpose of benefitting the MM & P Union is a plausible factual conclusion with sufficient support in the record and is thus not clearly erroneous.[6] We therefore proceed in our analysis bound by the District Court's finding of fact that the Trustees adopted Amendment 46 for the primary benefit of the union and not the Plan beneficiaries.

### Standard of Review

The standard of review to be employed by district courts when reviewing trustees' actions under ERISA was clearly established in this Circuit in *Sharron v. Amalgamated Insurance Agency Services*, 704 F.2d 562 (11th Cir.1983). "[T]he Trustees in the Administration of the Pension Plan must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious." *Sharron* at 564, quoting *Bayles v. Central States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97, 99 (5th Cir.1979).[7]

---

**6.** If the District Court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evi-

dence, the factfinder's choice between them cannot be clearly erroneous.
*Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1512, 84 L.Ed. 518, 528 (1985).

**7.** The Eleventh Circuit, sitting en banc, adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner*

█ The Supreme Court mandated that trustees have full authority with respect to coverage and eligibility requirements and that a court's role is limited to determining whether the trustees abused their broad discretion by adopting arbitrary and capricious standards. *U.M.W. v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).[8] The District Court should restrict its examination to finding whether a rational relationship exists between the Trustees' actions and the Plan's purpose.[9] This Court, under *Anderson v. Bessemer City*, should not review for reasonableness, nor should it substitute its view of a rational relationship for that of the District Court, rather, we must examine the District Court's factual findings for plausibility in light of the evidence presented.

█ Representatives for the Plan contend that the District Court applied an incorrect standard in reviewing the disparate treatment between re-employment with contributing and non-contributing employers. The District Court stated that "[w]hile these justifications may appear reasonable at first glance, they do not withstand the careful scrutiny with which they

must be analyzed." *Deak,* unpublished slip op. at 16 (footnote omitted).

The District Court's opinion clearly reflects that it did apply the correct standard of arbitrary and capricious conduct. The "careful scrutiny" language merely indicates that the trial court was not persuaded by the Trustees' "after-the-fact" explanations and that it closely examined the evidence to discover the true motivation of the Trustees in adopting Amendment 46 rather than merely examining whether the reasons given at trial could have been rationally related to legitimate concerns for the beneficiaries. We cannot overemphasis the importance of the District Court's finding of fact that the Trustee's contention that Amendment 46 was adopted solely to strengthen the Plan's financial integrity was an after-the-fact explanation. No matter how reasonable or rational the explanation may appear at this point in time, the District Court found that it was simply not the reason for the Trustees adopting Amendment 46.

### Arbitrary and Capricious Conduct

█ The conditions imposed by Amendment 46 violate federal law in two ways: (i) they are arbitrary and capricious in both

*v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981).

8. The Trustees rely on *Robinson* for the proposition that courts should not interfere with action taken by Trustees pursuant to a collective bargaining agreement. The Trustees correctly argue that ERISA requires them to act "in accordance with the documents and instruments governing the Plan" and that they are prohibited from ignoring an unambiguous command of a collective bargaining agreement policy that is consistent with the purpose of the retirement fund. They, therefore, conclude that Amendment 46 "may not be invalidated simply because the court feels that it is 'arbitrary and capricious,' where it is consistent with, and indeed mandated by, the product of collective bargaining." Brief for Appellant at 33.

The collective bargaining agreement of the MM & P is clear and positive. It requires that "Pensioners will be prohibited from working at any job in the maritime industry after a pension is awarded." Sec. XXIX C. Par. 8.

The subsection of ERISA relied on by the Trustees states "a fiduciary shall discharge his duties with respect to a Plan solely in the inter-

est of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the Plan *insofar as such documents and instruments are consistent with the provisions of this title or Title IV."* 29 U.S.C. § 1104(a)(1)(D) (emphasis added).

The Trustees are unable to surmount federal law with a private agreement. Trustees are prohibited from complying with any provision of a collective bargaining agreement which violates the provisions of ERISA prohibiting arbitrary and capricious payment of retirement benefits and impose fiduciary duties on the Trustees.

9. In *UMWA Health & Retirement Funds v. Robinson,* 455 U.S. 562, 570, 102 S.Ct. 1226, 1231, 71 L.Ed.2d 419, 427 (1982), the Supreme Court reversed the Court of Appeals decision which introduced a reasonableness standard when reviewing a benefit trust fund under § 302(c)(5). The Court held that the statute requires the Trustees to maintain the fund for the sole and exclusive benefit of the employees to the exclusion of all others and their conduct is not reviewable for reasonableness. It only requires a rational relationship to the purpose of solely benefitting the employees.

their effect on the class of beneficiaries represented by Captain Deak and the manner in which they were adopted; and (ii) they represent a breach of fiduciary duties because they were not enacted for the sole benefit of the Plan's beneficiaries.

In *Elser v. I.A.M. Pension Fund,* 684 F.2d 648 (9th Cir.1982), *cert. denied,* 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983), suspension provisions that deprived employees of past service credits were found arbitrary and capricious "because they discriminated among participants and because they were not actuarially justified." *Id.* at 657. *Elser* required the Trustees to show some rational nexus between the funds purpose and its discriminatory eligibility requirement. *Id.* at 656, quoting *Roark v. Lewis,* 401 F.2d 425, 429 (D.C.Cir.1968).

> [B]ecause finite contributions must be allocated among potential beneficiaries, inevitably financial and actuarial considerations sometimes will provide the only justification for an eligibility condition that discriminates between different classes of potential applicants for benefits. *As long as such conditions do not violate federal law or policy,* they are entitled to the same respect as any other provision in a collective bargaining agreement.

*Robinson* at 575, 102 S.Ct. at 1234, 71 L.Ed.2d at 430 (emphasis added).

The Plan attempts to justify the discrimination in Amendment 46 as a rational method of preserving the financial integrity of the Plan and limiting the unfunded liability of the Plan by discouraging non-MM & P employment. Captain Lowen, one of the Plan's Trustees, testified that Amendment 46 would strengthen the Plan's financial stability by replacing older members with new young members, hence reducing the average age of the Plan.[10] Captain Lowen further testified that although lowering the average age was "clearly ... a part of the assumptions of an actuary," the method in which this was achieved was not presented to the actuaries for independent analysis.

The same argument was made and rejected at the trial court and must similarly be rejected by this court. The trial court found as a matter of fact that "[t]he Defendants' after-the-fact explanations offered at trial concerning their motivations for the adoption of Amendment No. 46 simply do not mesh with the bulk of the evidence and inferences indicative of their intentions at the time of actual passage." *Deak v. MM & P Pension Plan,* No. 84–3651, unpublished slip op. at 16 (M.D.Fla. June 5, 1985).

> Contrary to the Defendants' assertions concerning the actuarial need for a measure ·like Amendment No. 46, both the Plan Administrator and a Union Trustee testified that although the Plan had some unfunded liability, it was adequately funded and actuarially sound at the time the Amendment was considered. There was, in fact, no reference whatsoever in the minutes of the meetings during which the Amendment was considered to any actuarial studies or projections upon which Amendment No. 46 could have been based. Indeed, while the Plan's actuarial consultants were actively advising the Trustees concerning the financial impact of ERISA and were aiding in the preparation of several other changes in the Plan provisions, they gave no advice concerning the necessity of imposing the harsh and differing penalties for the protection of the Plan's financial integrity.

*Id.* at 16–17 (Citations to trial transcript and exhibits omitted).

The Trustees of the MM & P Pension Plan failed to demonstrate that adopting the different periods of suspension provided in Amendment 46 was rationally related to preserving the financial integrity of the Plan. The District Court determined on conflicting evidence that the Trustees enacted Amendment 46 for the purpose of bolstering the Union's stronghold on the

---

10. The Union's membership was closed at the time so the only way the Union could accept new members was to replace old members. The initiation fees of the new members, an amount between $2,000 and $3,800, was paid entirely to the Union. The effect on the Plan of encouraging retirement was to increase retirement benefits currently payable and to decrease the average age of current participants.

supply of masters, mates and pilots and therefore, that the amendment was not rationally related to the financial integrity of the Plan. The Trustees' actions must be analyzed in terms of the actual intent at the time of amending the Plan and cannot be recast on appeal to show a rational nexus could have existed.

Not every aspect of a benefit plan lends itself to actuarial projection and analysis. In those cases, Trustees are expected to call upon their familiarity with benefit plans and their capacity as experienced Trustees to guide their conduct. 29 U.S.C. § 1104(a)(1)(B). The Ninth Circuit recognized that some behavioral predictions are often not subject to verification in *Harm v. Bay Area Pipe Traders Pension Plan Trust Fund*, 701 F.2d 1301, 1306 n. 7 (9th Cir.1983). While this tends to bolster the Plan's contention that actuaries were unnecessary to decide that the differing penalties would strengthen the Plan, the Trustees themselves testified that Amendment 46 was focused toward actuarial assumptions. In its brief the Plan stated that to determine the magnitude employer withdrawal would have on the Plan actuarial analysis was necessary. In light of the testimony that the Plan was financially sound at the time, we cannot say the District Court was clearly erroneous by emphasizing the total lack of actuarial analysis in finding any benefit to the Plan was not the true motive for amending the Plan. None of the Trustees' explanations of the purposes behind Amendment 46 justifies the discriminatory affect of distinguishing between re-employment with contributing and non-contributing employers.

The Second Circuit reached the same conclusion in its review of Amendment 47, a similar provision adopted at the same time as Amendment 46. The Second Circuit also rejected the Plan's contention that the purpose of discriminating between re-employment with MM & P employers and non-MM & P employers was motivated to benefit the Plan. *Chambless v. MM & P Pension Plan*, 772 F.2d 1032, 1039 (2d Cir.1985) ("Amendment 47 ... was not adopted to enhance the financial integrity of the Plan or to benefit the Plan participants and is thus arbitrary and capricious."), *cert. denied*, —— U.S. ——, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986).

### Trustees' Breach of Their Fiduciary Duties

■ A Trustee is a fiduciary of all participants and beneficiaries of a Plan and is required to "discharge his duties with respect to a Plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Despite the restrictive language of section 1104(a)(1)(A)(i), that a trustee act *"solely* in the interest of the participants and beneficiaries," § 1108 explicitly permits a fiduciary to serve as an officer, employee, agent, or other representative of a union or an employer. 29 U.S.C. § 1108(c)(3). This provision allows a trustee to serve as a fiduciary to two principals. The potential of a conflict of interest arising from this role places an onerous burden on the trustee not to violate fiduciary duties to one party while acting for the primary benefit of the other.

> Logic demands that if a fiduciary may hold such positions, then he may fulfill the concomitant responsibilities.... Thus, a Trustee of an employee benefit plan does not violate ERISA merely by also serving in a position with an employee organization or employer that requires him to represent such entity in the collective bargaining negotiations that determines the funding of the plan.

*Evans v. Bexley*, 750 F.2d 1498, 1499 (11th Cir.1985).

In this case however, the District Court held that the MM & P Trustees were not acting as fiduciaries of both parties during negotiations as in *Evans*. Instead the Trustees were using their positions as fiduciaries of the Plan to further goals of the MM & P Union by restricting retirees from accepting further employment with non-

participating, and hence non-MM & P Union, companies.[11]

The Supreme Court addressed this situation in *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). In *Central States,* the Trustees of a multi-employer benefit plan sought to conduct an audit of participating and non-participating employee records to determine whether the companies were making contributions on behalf of all eligible employees. The Supreme Court upheld the audit on the grounds that it was made pursuant to a good faith effort to protect the financial integrity of the Plan and was expressly authorized by the collective bargaining agreement. The Court held that "[i]n light of ERISA's standards, Central Transport correctly argue[d] that the audit request would be illegitimate under the standard of loyalty if it were actually an effort by Plan Trustees to expand Plan coverage ... or to acquire information about the employers to advance union goals." *Id.* 472 U.S. at 571 n. 12, 105 S.Ct. at 2840 n. 12, 86 L.Ed.2d at 458 n. 12. Here, the MM & P Trustees illegitimately advanced Union goals by amending the plan to expand Union membership and therefore violated their fiduciary duty of loyalty to the plan beneficiaries under ERISA.[12]

"[T]he principal statutory duties imposed on the Trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 142–43, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96, 104 (1985).

The Trustees did not breach any duties under ERISA solely by having fiduciary duties to both the Union or employer and the Plan beneficiaries. The Trustees can act on behalf of both parties until a situation arises which requires action in the interest of a party other than, and in conflict with the interests of, the plan beneficiaries. Thus, the statutorily imposed fiduciary duty to act solely in the interest of the participants and beneficiaries under ERISA requires trustees who are also officers or agents of a corporation or a union to act with caution in areas of potential conflicts of interest.

The Second Circuit cautioned Trustees of the inherent dangers in maintaining conflicting fiduciary duties in *Donovan v. Bierwirth,* 680 F.2d 263 (2d Cir.1982), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982):

Although officers of a corporation who are Trustees of its pension plan do not violate their duties as Trustees by taking action which, after careful and impartial investigation, they reasonably conclude best to promote the interest of participants and beneficiaries simply because it incidentally benefits the corporation, or, indeed, themselves, their decisions must be made with an eye single to the interest of the participants and beneficiaries. Restatement of Trusts 2d § 170 (1959); II Scott on Trusts § 170, at 1297–99 (1967).... [T]his, in turn, imposes the

---

11. The Second Circuit identified the same non-beneficiary interests of the company and Union Trustees in analyzing the companion Amendment 47.

[E]mployer Trustees supported the Amendment to encourage participants to remain working as long as possible for employers who had contributed to the Plan, so that the employers could get their money's worth, whereas the Union Trustees supported the Amendment to attract younger licensed deck officers. Neither the employer nor Union Trustees seemed to support the Amendment to enhance the financial integrity of the Plan itself.

*Chambless* at 1039.

12. It is difficult to conceive of a situation where a benefit to the Union would not have incidental benefit to the Plan. If the Union were to obtain a monopoly on masters, mates and pilots, then all employers would have to contribute to the Plan which would, of course, strengthen the Plan. However, the statute requires the Trustees to act for the sole benefit of the Plan beneficiaries. The District Court was entitled to find from the evidence at trial that the actions of the Trustees were for the benefit of the Union. The benefit to the Plan cannot legitimize their motives, especially in light of the findings of fact that the Plan was not underfinanced at the time and that the Trustees made no actuarial investigation of Amendment No. 46.

duty on the Trustees to avoid placing themselves in a position where their acts as officers or directors of their corporation will prevent their functioning with the complete loyalty to participants demanded of them as Trustees of a pension plan.

*Id.* at 271.

The MM & P Pension Plan Trustees failed to ensure Amendment 46 would best promote the interest of the participants and beneficiaries. In fact, the District Court determined that they acted for the sole benefit of the union and without the careful and impartial investigation available from the actuaries who were already investigating other aspects of the Plan. The union representatives drafted Amendment 46 and no independent review was sought. The Trustees also failed to examine other less restrictive possible methods to accomplish their stated goal, even though one Trustee testified that less discriminatory and harsh methods could be conceived, they were not considered.[13] The fact that Amendment 46 may also benefit the Plan beneficiaries does not cure the Trustees' failure to act in the interest of the beneficiaries or their failure to protect the beneficiaries against their own conflict of interest.

We do not hold, however, that in all circumstances a provision similar to, or even identical with, Amendment 46 would violate ERISA. If the Trustees of a plan demonstrate that a provision is rationally related to the financial integrity of the Plan and is adopted absent from or insulated from any conflicts of interest, consistent with their fiduciary duties, ERISA's protections of the participants and beneficiaries could be satisfied.

We find, as did the Second Circuit in *Chambless* and consistent with the Ninth

Circuit in *Elser*, that absent any unfunded liability and actuarial determinations requiring restrictions on re-employment, discriminating among Plan beneficiaries to strengthen the Union was arbitrary and capricious and violated the Trustee's fiduciary duty of loyalty. The testimony supported the District Court's conclusion that the Trustees acted for the primary benefit of the Union in adopting Amendment 46 which arbitrarily and unjustifiably discriminated among the participants of the Plan.

AFFIRMED.

---

13. In response to a question posed by the court, Captain Lowen testified as follows:

THE COURT: Well, I was not asking whether an even more restrictive clause might have been fashioned, but whether a lesser one might have been that would have still served the same objects, and if that's true, why the lesser one should not have been the preferred clause in terms of achieving those objects

with the least possible effect upon persons in Class 1 in this case?

THE WITNESS: All right. You asked if I could conceive of one?—Yes, I can conceive of one. But we would not—we did not discuss it at that period in time. There was no discussion concerning gradients or median gradients of either restrictions or non-restrictions.