67 F.3d 1333
 64 USLW 2281, 19 Employee Benefits Cas. 2041,
Pens. Plan Guide P 23914B
 MILWAUKEE AREA JOINT APPRENTICESHIP TRAINING COMMITTEE FOR
the ELECTRICAL INDUSTRY, Milwaukee Electrical Joint
Apprenticeship and Training Trust Fund, Joe Ramsack, Lee
Hollenbeck, Dick Neiman, and Carol Megna, Present Trustees
of the Milwaukee Electrical Joint Apprenticeship and
Training Trust Fund, Plaintiffs-Appellants,
v.
Andrew A. HOWELL, Defendant-Appellee.
 No. 95-1489.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 14, 1995.
Decided Oct. 16, 1995.
 
 Frederick Perillo (argued), John J. Brennan, Previant, Goldberg, Uelmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for Plaintiffs-Appellants.
 David P. Lowe (argued), Jacquart & Lowe, Milwaukee, WI, for Defendant-Appellee.
 Before CUMMINGS, FLAUM and ROVNER, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In 1986, defendant Andrew A. Howell, entered an electrical training program that was provided by the plaintiffs, the trustees of the Milwaukee Electrical Joint Apprenticeship and Training Trust Fund ("Trust Fund"). Upon entering the program, Howell signed a loan agreement that obligated him to repay the cost of his training in cash should he choose to work for an employer within the industry that does not contribute to this or a like apprenticeship training trust fund.
 
 
 2
 The district court held that Howell had breached the loan agreement by accepting employment as an electrician with the City of Milwaukee, which does not contribute to an apprenticeship trust fund. However, the district court granted Howell's motion for summary judgment on the grounds that the repayment plan established by the plaintiffs violated ERISA, 29 U.S.C. Sec. 1104(a)(1), because it was not enacted solely for the benefit of its participants. Because the plaintiffs owed no fiduciary duty to plan participants in the adoption of the loan agreement, the judgment below is reversed.
 
 BACKGROUND
 
 3
 The following facts are undisputed. The Trust Fund is a joint union-employer training apprenticeship trust fund organized pursuant to section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. Sec. 186(c)(5). The Trust Fund trains apprentices to become journeyman electricians. The committee that administers the Trust Fund is composed of an equal number of union and employer representatives.
 
 
 4
 Pursuant to collective bargaining agreements, certain employers make contributions to the Trust Fund to provide for the training of the apprentices. The contributions are made pursuant to a formula and represent 1% of each employer's gross monthly labor payroll for each hour worked by journeymen and apprentices.
 
 
 5
 While the training program has been in existence for many years, in 1986 the trustees adopted the Scholarship Loan Plan ("SLP"). The SLP was adopted in response to what the trustees viewed as a marked increase in the number of journeymen who, after completing the training program at the expense of contributing employers, went to work for employers that do not contribute to the Trust Fund.
 
 
 6
 According to the SLP, each apprentice signs a scholarship loan agreement and a promissory note. The terms of the agreement provide that the apprentice is at all times free to leave the electrical industry with no resulting repayment obligation. However, if the apprentice chooses to accept employment within the electrical industry, he has two options: (1) repay the cost of his training in kind by working for an employer who contributes either to the Trust Fund or to a like trust fund, or (2) default under the terms of the agreement by working for an employer who does not contribute to either the Trust Fund or a like trust fund, and repay the cost of his training in cash.[1]
 
 
 7
 Howell entered the training program in 1986, signing a promissory note and scholarship loan agreement ("Agreement") which included the above repayment obligations. The gross amount of his loan was $10,206.92. Howell finished the training program and achieved journeyman status in 1990. Throughout his entire apprenticeship, and until December 1991, Howell worked for employers that contributed to the Trust Fund. In December 1991, however, Howell accepted employment as an electrician with the City of Milwaukee Bureau of Public Works. The City of Milwaukee does not contribute to any apprenticeship training trust fund. The Trust Fund subsequently sued Howell claiming that his employment with the City of Milwaukee constituted a breach of the Agreement.
 
 
 8
 The district court found as an undisputed fact that Howell's employment with the City of Milwaukee constituted a breach of the Agreement. However, the lower court denied the Trust Fund's motion for summary judgment and granted Howell's motion for summary judgment, concluding that Howell need not repay his loan because the trustees' enactment of the SLP violated their fiduciary duty as imposed by ERISA, 29 U.S.C. Sec. 1104(a)(1). The Trust Fund appeals the lower court's decision. This Court has jurisdiction of the appeal pursuant to 28 U.S.C. Sec. 1291.
 
 DISCUSSION
 
 9
 This Court reviews the grant or denial of summary judgment de novo. East Food & Liquor, Inc. v. United States, 50 F.3d 1405, 1410 (7th Cir.1995). In so doing, we review the facts alleged in the complaint and the legitimate inferences to be drawn therefrom in the light most favorable to the plaintiffs. Id.
 
 1. Howell's Breach of the Loan Agreement
 
 10
 The district court concluded that the undisputed facts showed that Howell breached the Agreement by accepting employment with the City of Milwaukee. Howell argues that the district court erred in this determination. We disagree.
 
 
 11
 The Agreement contained the following provision:
 
 
 12
 5. It will constitute an immediate breach of this Agreement if the apprentice accepts employment in the electrical industry from an employer who does not have a collective bargaining agreement which provides for the payment of contributions to the Trust Fund or a like Joint Apprenticeship and Training Trust Fund.
 
 
 13
 [Pl.App. 28] (emphasis added).
 
 
 14
 Howell points out that the City of Milwaukee is a signatory to a collective bargaining agreement that requires the training of apprentice electricians. He additionally notes that the City of Milwaukee pays for such training. However, the district court found that Howell produced no evidence that the City of Milwaukee contributes either to the Trust Fund or to any other trust fund. The district court concluded that "[c]ontribution to a training program, but not a trust fund, does not satisfy the terms of the scholarship loan agreement." [Pl.App. 5]. We agree with the district court's conclusion.
 
 2. Standing to Assert ERISA Violation
 
 15
 In its brief to this Court, the Trust Fund initially argues that Howell lacks standing to assert an ERISA violation as a defense to his obligation to repay his loan. However, the Trust Fund failed to argue this issue before the court below.[2] Therefore, we need not consider the question of Howell's standing to raise an ERISA violation as a defense to his repayment obligation, as the issue has been waived. United States v. Rode Corp., 996 F.2d 174, 179 (7th Cir.1993).
 
 3. Breach of Fiduciary Duty
 
 16
 The district court held that Howell was not required to repay his loan because the trustees' adoption of the SLP violated ERISA, 29 U.S.C. Sec. 1104(a)(1). The Trust Fund argues that the district court erred in this determination. For the reasons discussed below, we agree.
 
 
 17
 Joint apprenticeship and training funds are "welfare benefit plans" under ERISA, 29 U.S.C. Sec. 1002(1)(A). As such, the trustees of the plan are bound by the fiduciary duties imposed by ERISA, 29 U.S.C. Sec. 1104(a)(1), which provides in part,
 
 
 18
 [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and:
 
 
 19
 (A) for the exclusive purpose of:
 
 
 20
 (i) providing benefits to participants and their beneficiaries.
 
 
 21
 The district court concluded that the purpose of enacting the SLP "appears to be to ensure contributing employers a pool of trained workers that is unavailable to the competition." [Pl.App. 9-10]. The district court therefore decided that the SLP was "not enacted solely in the interest of the Trust Fund's participants," and thus violated ERISA. [Pl.App. 10].
 
 
 22
 In analyzing the fiduciary duty issue, the district court relied upon Joint Apprenticeship & Training Comm. of the Sheet Metal Workers' Int'l Ass'n, Local No. 9 v. Chapman, 744 F.Supp. 1008 (D.Colo.1990). In Chapman, the court held that a similar apprentice repayment arrangement was unenforceable because the trustees' adoption of the plan was arbitrary and capricious, and a violation of the fiduciary duties imposed by both ERISA and the trust documents. Id. at 1020. Specifically, the court found a fiduciary duty violation because the trustees did not provide sufficient evidence of a financial justification for the repayment requirement, or that they had considered less restrictive means for accomplishing their stated purpose. Id.
 
 
 23
 The Chapman court based its holding on Deak v. Masters, Mates and Pilots Pension Plan, 821 F.2d 572 (11th Cir.1987), certiorari denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Deak involved a trustee breach of fiduciary duty by suspending benefits for retired employees working at non-union employers while allowing those working for union employers to draw full benefits. However, Deak is distinguishable from the Trust Fund's situation, as well as from that in Chapman, because it involved action regarding vested pension benefits. Welfare benefit plans, on the other hand, are exempt from the participation-and-vesting requirements imposed by ERISA, 29 U.S.C. Sec. 1081(a)(1). Because the Trust Fund is a welfare benefit plan, and therefore does not involve vested benefits, the analysis in Deak is inapplicable here.
 
 
 24
 However, we conclude that the district court's analysis and reliance on Chapman were incorrect for a more significant reason. Both the district court and the Chapman court failed to recognize the distinction between the scope of fiduciary duties owed during plan administration and the lack of fiduciary duties owed during plan design or amendment.
 
 
 25
 This Circuit has consistently held that the fiduciary duties owed to participants and beneficiaries under ERISA apply only to the administration of a plan, not to its formation, amendment, or modification. McGath v. Auto-Body North Shore, Inc., 7 F.3d 665, 670-671 (7th Cir.1993); Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan, 3 F.3d 994, 1001-1002 (7th Cir.1993); Young v. Standard Oil (Indiana), 849 F.2d 1039, 1045 (7th Cir.1988).[3] This is in recognition of the fact that ERISA "does not regulate the substantive content of welfare benefit plans." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). As this Circuit has previously noted, it would contravene Congress's intent for this Court to dictate the content of a welfare benefit plan. Hickey v. A.E. Staley Mfg., 995 F.2d 1385, 1393 (7th Cir.1993). As such, this Circuit has held that "an employer unilaterally may change or abolish [a welfare benefit plan] without violating ERISA." Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 743 (7th Cir.1991).
 
 
 26
 In adopting the SLP, the trustees dictated that participants in the training program would no longer be able to accept employment with non-contributing employers without incurring a repayment obligation. This constituted a substantive change to the terms of the Trust Fund's apprenticeship program. In other words, it was an amendment.
 
 
 27
 It is immaterial that this amendment took the form of separate loan agreements, as opposed to a formal change to the trust agreement itself. Apprenticeship funds are exempt from ERISA's requirement of a formal written benefit plan. 29 C.F.R. Sec. 2520.104-22. As such, there is "no requirement that the documents collectively [representing] the employee benefit plan be formally labelled as such." Horn v. Berdon, Inc. Defined Benefit Pension Plan, 938 F.2d 125, 127-128 (9th Cir.1991). Here, the "plan," for purposes of ERISA, consists of the trust document and the scholarship loan agreements themselves. Thus the enactment of the SLP constituted an amendment to the plan. Because the enactment of the SLP was an amendment to the plan, as opposed to administration of it, the trustees were not acting as fiduciaries, and thus they owed no fiduciary duty to Howell in the context of this action.
 
 
 28
 Howell takes the position that the argument that the enactment of the SLP constituted plan "design," as opposed to plan "administration," was waived by the Trust Fund. However, both parties and the district court consistently viewed the question as whether the trustees violated ERISA by enacting the SLP. Whether that enactment constituted a breach of fiduciary duty is a question of law which the district court addressed. Therefore, the issue was sufficiently brought to the district court's attention and was not waived.
 
 4. Howell's Remaining Defenses
 
 29
 Howell argues that if this Court reverses the decision of the district court, we must remand the case for further evaluation of those defenses raised by Howell but not addressed by the court below. However, both of Howell's remaining defenses are questions of law that were presented to the court below, and that this Court may determine.
 
 
 30
 Howell first argues that the trustees adopted the SLP without necessary authority, which must be found in the Milwaukee Electrical Joint Apprenticeship and Training Plan Trust Agreement ("Trust Agreement"). If true, this would constitute a violation of ERISA, which provides that "a fiduciary shall discharge his duties with respect to a plan ... in accordance with the documents and instruments governing the plan." 29 U.S.C. Sec. 1104(a)(1)(D).
 
 
 31
 Article VII, Section 3 of the Trust Agreement specifically grants the trustees, inter alia, the power:
 
 
 32
 (m) To enter into any and all contracts and agreements for carrying out the terms of this Plan and for the administration and operation of the Plan and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the participants involved.
 
 
 33
 [Pl.App. 28] (emphasis added).
 
 
 34
 We conclude that the broad grant of power under this provision includes the authority to enact the SLP. Therefore, the trustees were not without the authority necessary to adopt the SLP.
 
 
 35
 Howell next argues that the repayment provision of the Agreement violates Wis.Stat. Sec. 103.465, governing restrictive covenants in employment contracts.[4] Under Wisconsin law, the determination of whether a covenant violates Sec. 103.465 is a question of law, but must be determined "with reference to the facts of the particular case." Nalco Chem. Co. v. Hydro Tech., Inc., 809 F.Supp. 672, 678 (E.D.Wis.1992) (quoting Geocaris v. Surgical Consultants, Ltd., 100 Wis.2d 387, 388, 302 N.W.2d 76 (Ct.App.1981)). Because the facts of Howell's situation demonstrate that the repayment provision of the Agreement is not a restrictive covenant, there was no violation of Sec. 103.465.
 
 
 36
 A restrictive covenant is a covenant that is typically included in an employment contract to govern an employee's conduct upon the termination of his employment relationship. Such a covenant is "intended to prevent a former employee from competitively using information or contacts gained as a result of the employee's association with the employer." State Arms Gun Co., Inc. v. Schmelling, --- Wis.2d ----, 539 N.W.2d 135 (Wis.App.1995). Howell's obligation, on the other hand, is not such a covenant; it does not prevent him from working for a competing employer, from working within a certain industry, or from working within a geographic area. It is simply an obligation to repay the cost of his training.
 
 
 37
 Presumably the trustees could have modeled the SLP after standard collegiate and post-graduate school loans by requiring Howell's training costs to be repaid in cash, regardless of his employment situation. However, the trustees chose to provide Howell with an in kind repayment opportunity. The choice of whether to repay the loan in cash or in kind was completely within his discretion. In this respect, there is little difference between Howell's obligation and the compulsory public service requirements attached to some government-financed loan programs, which have consistently been held to be enforceable.[5]
 
 
 38
 In deciding that a similar apprenticeship arrangement did not violate public policy, the court in National Training Fund v. Maddux, 751 F.Supp. 120 (S.D.Tex.1990), presented the following persuasive rationale for the existence of repayment obligations.
 
 
 39
 These national training Funds are not charities, giving away their resources. The Funds train a limited number of people who will directly benefit the members.... The reimbursement prevents freeloading by neighboring competitors. Because they do not pay for the program, they can pay workers slightly more than the members can at the same total cost. The public is best served by enforcement of a reasonable reimbursement provision.
 
 
 40
 Without a check on freeloading by non-participating companies, the Funds would not have trained [the apprentice]. The work-or-pay provision is what allowed [him] to acquire his new skill. The reimbursement makes a non-participating employer equal to a participating employer if he pays the reimbursement, either in the form of a lump sum or a higher salary to get the trained worker.
 
 
 41
 Id. at 121-122.
 
 
 42
 Howell signed the Agreement prior to accepting any of the benefits of the training program. The Agreement stated that the Trust Fund would provide Howell with the benefit of four years of training "worth at least the amount loaned to [Howell] during the training period," and that Howell would repay the loan "in full, either in cash ... or by in-kind credits."[6] There was no element of coercion on the part of the trustees, and no element of surprise on the part of Howell. Given these circumstances, we conclude that Howell's repayment obligation was not a restriction on his employment, and therefore not a violation of Wis.Stat. Sec. 103.465.
 
 CONCLUSION
 
 43
 We agree with the decision of the district court concluding that Howell breached the Agreement by accepting employment as an electrician with the City of Milwaukee. We also conclude that the trustees of the Trust Fund were acting under proper authority when they enacted the SLP, and that Howell's obligation to repay the cost of his training was not a violation of Wis.Stat. Sec. 103.465. However, because the trustees of the Trust Fund did not violate ERISA by enacting the SLP, we reverse the decision of the district court and remand the case with instructions that summary judgment be entered in favor of the Trust Fund.
 
 
 
 [1]
 The participant receives a credit for all time spent in the employ of contributing employers after attaining journeyman status
 
 
 [2]
 While attempting to argue that this issue was "implicit" in the other arguments that the Trust Fund expressly asserted before the district court, counsel for the Trust Fund admitted at oral argument that this issue was "not addressed below."
 
 
 [3]
 Our position is in line with virtually every circuit which has decided this issue. See Siskind v. Sperry Retirement Program, Unisys, 47 F.3d 498, 505 (2d Cir.1995); Izzarelli v. Rexene Products Co., 24 F.3d 1506 (5th Cir.1994); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155 (3d Cir.1990); Musto v. American General Corp., 861 F.2d 897, 912 (6th Cir.1988); Anderson v. John Morrell & Co., 830 F.2d 872, 876 (8th Cir.1987); Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1432-1433 (9th Cir.1986); Sutton v. Weirton Steel Division, 724 F.2d 406 (4th Cir.1983), certiorari denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984)
 
 
 [4]
 Wis.Stat. Sec. 103.465 provides,
 A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.
 
 
 [5]
 The Public Health and National Health Service Corps Scholarship Training Program, 42 U.S.C. Sec. 234 et seq., and its successor, the National Health Service Corps Scholarship Program, 42 U.S.C. Sec. 254 et seq., both provide scholarship funds to students. Upon receiving the funds, the recipient signs an agreement which obligates him to serve for a period of time in the public health industry upon graduation. If the recipient chooses to breach this agreement, the government is allowed to sue the scholarship recipient for the amount of the loan plus statutory damages. These agreements have been held to be valid and enforceable. See, e.g., United States v. Vanhorn, 20 F.3d 104 (4th Cir.1994) (holding that a doctor was required to repay the amount of her loan, plus statutory damages, when she breached her loan agreement by not serving in the public health industry); United States v. Becker, 995 F.2d 779 (7th Cir.1993) (same); United States v. Duffy, 879 F.2d 192 (6th Cir.1989) (same)
 
 
 [6]
 The Agreement contains the following two provisions
 
 
 [2]
 The Committee will provide training worth at least the amount loaned to the apprentice during the training program
 
 
 [3]
 The scholarship loan may be repaid by the apprentice in full, either in cash as set forth in Exhibit 1 hereto or by in-kind credits, as set forth in paragraph 7 hereof
 [Pl.App. 28].