NOT FOR PUBLICATION
File Name: 05a0132n.06
Filed: February 18, 2005

NO. 03-4588

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DUER CONSTRUCTION COMPANY, INC., et al.,

Plaintiffs-Appellees,

v.

TRI-COUNTY BUILDING TRADES HEALTH
FUND; JACK GREEN, Chairman of the Board
of Trustees,

Defendants-Appellants.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE: SUHRHEINRICH, ROGERS and COOK, Circuit Judges.

PER CURIAM. Defendants-Appellants Tri County Building Trades Health Fund, et al. appeal from the judgment entry of the district court finding breach of fiduciary duty under ERISA[1] and granting Appellees-Duer Construction Company, Inc. a permanent injunction.[2] We AFFIRM.

I.

Defendant Tri-County is a multi-employer ERISA welfare fund in Northeast Ohio. The fund was established in the mid-1960s for construction employers operating in the Summit, Medina, and Portage counties. Tri-County began as a health insurance fund for unionized construction employees, but currently includes among its contributing employers both unionized and non-union

---

[1]Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (1974), as amended, 29 U.S.C. § 1001 (1996).

[2]This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

employers. It also currently provides coverage to hourly paid construction workers, as well as office clericals and supervisors. Tri-County also provides coverage for retirees and surviving spouses of deceased participants. The four labor unions that participate in Tri-County are Bricklayers Local 7, Sheetmetal Workers Local 33, Painters Local 603, and Painters Local 788.

Tri-County requires every contributing employer to sign a written document that sets forth the basis on which it will make contributions to the fund. The documents are either a collective bargaining agreement with one of the four labor unions, or a written document, called an Assent of Participation, that authorizes employer contributions to Tri-County.

The Amended and Restated Agreement and Declaration of Trust, effective April 1, 1989, defines "employer" as including any firm "who has a Collective Bargaining Agreement with a Union participating in the Trust Fund" and any firm "whose Collective Bargaining Agreement has expired with the Union participating in the Trust Fund, but who is obligated under the Labor Management Relations Act of 1947, as amended, to contribute to the Trust Fund."

Duer is a family-owned masonry contractor in the Akron, Ohio area. Duer's workforce consists primarily of bricklayers, laborers, and a small workforce of office and supervisory personnel. Until 1986, Duer's hourly production workers were unionized employees represented by various construction unions such as Bricklayers and Laborers. Duer's collective bargaining agreement with Bricklayers expired in 1985. For approximately the last twenty years, Duer also made contributions on behalf of its office and supervisory personnel.

Prior to 1985, when Duer's bricklayers were represented by Bricklayers Local 7, Duer made contributions to Tri-County for its bricklayers pursuant to the various labor agreements entered into between Duer and Bricklayers Local 7. After the Bricklayers labor agreement expired in 1985, Duer

attempted to make contributions to Tri-County on behalf of its bricklayers. Tri-County refused to accept the contributions, so Duer filed a lawsuit in the United States District Court for the Northern District of Ohio, Eastern Division. Tri-County and Duer settled the suit by means of a written settlement executed on April 15, 1986. As part of the 1986 settlement, Duer and Tri-County executed an Assent of Participation Agreement requiring that Duer make contributions to Tri-County on behalf of Duer's bricklayers, and requiring Tri-County to continue to accept such contributions on an ongoing basis until such time as the parties mutually agreed to terminate the 1986 Assent of Participation. The 1986 Settlement Agreement also required Tri-County to treat Duer's bricklayers no differently than any other employees of any Tri-County contributing employer. Duer promised to comply with the "rules and regulations established by the Trustees."

Since 1990, Laborers Local 894 and Bricklayers Local 7 have actively attempted to organize Duer's laborers and bricklayers. Throughout that time period, Kenneth C. Holland has served as the Business Manager for Laborers Local 894, and has been a Trustee of Tri-County for the last six or seven years. Holland is also President of the Tri-County Building Trades Council, an organization of fourteen different unions, and serves on the Trustee Board for the Laborers Union Fringe Benefit Funds in Columbus, Ohio. Trustee Jack Green was also the Business Agent for Bricklayers Local 7.

Duer made, and Tri-County accepted, timely, continuous contributions for health insurance coverage for Duer's bricklayers from thenceforth until July 2003.

In 2000, Tri-County required Duer to sign an Assent of Participation for Duer's office and supervisory personnel. On July 25, 2000, Duer signed an Assent of Participation form on behalf of

its office and supervisory employees. By its terms, the July 25, 2000 Assent of Participation form applies only to Duer's "office and supervisory employees" and specifically excludes "production and maintenance employees and employees who are performing work typically known to be bargaining unit work under any collective bargaining agreement within the construction industry" from its coverage. The 2000 Assent also contains the following provision:

> In the event it is determined by the Trustees that contributions have been paid into the Plan for coverage of employees who are not permitted to participate in the Plan or who are not covered by this Assent of Participation, the Employer agrees that the Trustees may exclude all employees of the Employer including all office and supervisory employees who would otherwise be entitled to coverage from the Plan. In addition, the Trustees may hold the Employer responsible for any loss incurred by the Plan as a result of the Employer's inclusion of employees who are not permitted to participate in the Plan including, but not limited to any cost associated with an audit, attorneys' fees or court costs.

The 2000 Assent also expressly states that "[t]his Assent supersedes any Assent previously executed."

In 2002, Tri-County arranged for an audit of Duer's contributions to the fund. Specifically, Tri-County requested that payroll records for the six-month period beginning January 1, 2001, and ending June 30, 2001, be made available. Tri-County subsequently asked for an additional twelve months of payroll records. On August 1, 2002, Joshua Whelan, an accountant/auditor with the Hausser & Taylor accounting firm conducted the audit of Duer's contributions at Duer's office in Akron. At that time, Duer provided the requested records, spanning an eighteen-month period of January 1, 2001, through June 30, 2002. Also, on August 1, 2002, Whelan asked to see the payroll records for Agatha Griebel for calendar year 2000. Duer rejected this request, however, because it was outside the audit period. Further, the office and supervisory Assent of Participation form was not signed until July 25, 2000.

On August 26, 2003, Hausser & Taylor issued a final report to Tri-County. The final audit determined that contributions were being made on behalf of Agatha Griebel, despite the fact that she was retired; and not being made for two other office and supervisory personnel, Barb Hartz and Karen Thomas, despite the fact that contributions were mandatory. The audit found no deficiencies regarding Duer's bricklayer contributions.

On April 3, 2003, the Trustees voted to terminate Duer from the fund. On April 29, 2003, Tri-County sent notice to Duer that, effective July 1, 2003, its participation as an employer in Tri-County was terminated. It provided the following reasons:

> Participation in the Tri-County Building Trades Health Fund is permitted only for employees represented by a participating Union when the employer of those employees is required to make contributions in accordance with the Collective Bargaining Agreement with the participating Union. Duer's employees do not fall within this definition of employees under the Fund.

> Furthermore, Duer Construction Co.'s relationship with the Fund for its non-office and supervisory employees does not qualify it as an employer since it does not have a Collective Bargaining Agreement with a participating Union, nor is it obligated under the Labor Management Relations Act of 1947, as amended, to contribute to the Fund as an employer whose contract with a participating Union has expired.

> Duer Construction Co.,'s inclusion of employees who are not permitted to participate in the Plan is contrary to its Assent of Participation dated July 25, 2000. Such inclusion warrants Trustee action to exclude all employees from coverage in the Plan.

> Duer Construction Co. also excluded certain employees form [sic] coverage without consent of the Fund.

> Finally, Duer Construction's failure to comply with the request of the Fund's auditors to audit payroll records for the period of January 1, 2000 through December 31, 2000 during which period, Duer was a contributing employer to the Fund, is contrary to the policy of the Fund, and constitutes a further basis for terminating the relationship.

The letter is signed by Jack Green, Chairman of the Board of Trustees.

Duer filed this lawsuit, alleging breach of the 1986 Settlement Agreement and Assent of Participation, and breach of fiduciary duties.

The district court conducted a bench trial from September 4 to September 9, 2003, on the issue of permanent injunction preventing Tri-County from terminating Duer as a contributing employer and its bricklayers as parti cipants. Five Tri-County Trustees testified at the bench trial: Holland, Green, Charles Davis, Edwin Hugh, and Paul Newman. The district court granted a permanent injunction by order dated November 13, 2003. The court expressly limited its consideration to Duer's bricklayers and not to Duer's office and supervisory personnel, and reserved ruling on causes of action other than breach of fiduciary duty and a claim for declaratory relief. Specifically, the district court ruled that, in taking action to terminate Duer from the Fund, Defendants breached their fiduciary duties to Plaintiff bricklayers under ERISA because they acted in the interest of the Laborers and Bricklayers union, and not Plaintiff bricklayers.

This timely appeal follows.

## II.

On appeal from a judgment entry following a bench trial, this Court reviews the district court's findings of fact for clear error and its conclusions of law de novo. *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 185 (6th Cir. 2004). When fact findings involve credibility determinations, even greater deference is required. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985).

Tri-County raises five issues on appeal.

### A.

-6-

Tri-County argues that the district court improperly interpreted ERISA in finding that the Trustees breached their fiduciary duty because the court failed to consider that the Trustees were acting according to their authority under the language of the Plan documents.

Trustees' responsibilities and powers under ERISA derive from the common law of trusts, as further delineated in the statute through strict standards of trustee conduct. *Central States Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 570 (1985). Under ERISA, a plan fiduciary "shall discharge his duties with respect to . . . beneficiaries and . . . for the exclusive purpose of providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A); *Central Transp.*, 472 U.S. at 571. A fiduciary also "shall discharge his duties with respect to a plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Thus, under the duty of loyalty, "all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries." *Gregg v. Transp. Workers of America Int'l*, 343 F.3d 833, 840 (6th Cir. 2003) (internal quotation marks omitted). Under the "prudent man" standard of care, a fiduciary has "an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion to those same plan participants and beneficiaries." *Id.* at 840-41 (internal quotation marks omitted). Further, "an ERISA fiduciary must act for the exclusive purpose of providing benefits to plan beneficiaries." *Id.* at 841 (internal quotation marks omitted). "The duties charged to an ERISA fiduciary are the highest known to the law." *Id.* (internal quotation marks omitted).

The Supreme Court has remarked that an audit request by a plan would be illegitimate under the standard of loyalty if it were in reality an effort by plan trustees " to acquire information about the employers to advance union goals." *Central Transp.*, 472 U.S. at 571 n.12; *Plumber, Steamfitter & Shipfitter Indus. Plan & Trust v. Siemens Bldg. Techs, Inc.*, 228 F.3d 964, 968 (9th Cir. 2000) (same; citing *Central Transp.*); *see also New York State Teamsters Conference Pension & Ret. Fund v. Boening Brothers, Inc.*, 92 F.3d 127, 130-34 (2d Cir. 1996) (holding that trustees for multi-employer pension fund had the authority pursuant to their fiduciary duties under common law of trusts as incorporated into ERISA to conduct an audit of contributing employers' payroll records; but noting that although not before it, broad scope of the requested audit aroused concern that audit might "mask an ulterior purpose").

Tri-County asserts that the action taken at the April 2, 2003 meeting and communicated in the April 29 termination notice letter to Duer was appropriate action under the governing documents because the 2000 Letter of Assent expressly allows the Trustees to "exclude all employees of the Employer including all office and supervisory employees who would otherwise be entitled to coverage from the Plan" in the event the Trustees determine that contributions have been made for employees who are not permitted to participate. Tri-County asserts that the audit revealed that Duer was making contributions for Agatha Griebel as if she were an active employee. Tri-County further contends that its actions were justified because Duer no longer met the definition of "employer" in the relevant Plan documents.

Tri-County's arguments obfuscate the district court's essential finding that the Trustees breached their fiduciary duties under ERISA because they acted out of an improper motive, and not from a desire to "maintain appropriate discipline regarding enforcement, collection and application

of the benefits to participants taken as a whole." The district court made specific findings of fact in support of its legal conclusion that the Trustees breached their fiduciary duties to the Plaintiff bricklayers under ERISA. First and foremost, the district court specifically found that "[t]he Tri-County Board of Trustees terminated the Plaintiff bricklayers from the health fund because Duer was not a signatory to a collective bargaining agreement." The district court made further fact findings in support of this conclusion. The court found as a matter of fact that Trustee Holland voted to terminate Plaintiff bricklayers from the fund because Duer was not a signatory to a collective bargaining agreement, but would "have had no concern at all" about Duer's participation in Tri-County had Duer been unionized. Similarly, the court found that Trustee Green opposed Duer's participation in the Fund because Duer was not a signatory to a collective bargaining agreement with a local union, but would not have been concerned if Duer had been a unionized mason contractor. Trustee Newman voted to terminate Duer's bricklayers from the plan because the company was not a signatory to a collective bargaining agreement, and had it been unionized, Newman would not have voted to terminate the company, but instead would have suggested that the Board "work with the company to correct the delinquency. Trustee Davis abstained from the April 2, 2003 vote, but believed that the other trustees voted to terminate Duer because Duer was not a signatory to a collective bargaining agreement.

The district court found that the Trustees acted out of an improper motive "to advance union goals." *Central Transp.*, 472 U.S. at 571 n.12. *Cf. Deak v. Masters, Mates & Pilots Pension Plan*, 821 F.2d 572, 580-81 (11th Cir. 1987) (holding that union trustees breached their duty of loyalty under ERISA by adopting a plan amendment that restricted plan retirees from accepting employment with non-union employers, although amendment did not adversely affect every plan retiree, but

merely the group who wished to work for non-union employers). These fact findings, which are supported by the record and not clearly erroneous, support the court's legal conclusion that the Trustees breached their duty of loyalty under § 1104(a). *Cf. Deak*, 821 F.2d at 581 (holding that trustees violated their fiduciary duty of loyalty to plan beneficiaries under ERISA by amending plan to strengthen union).

Additional evidence supports the district court's conclusion. Whelan, who conducted the initial audit, testified that prior to the audit, he was informed by Tri-County Attorney Gore, who also represented Bricklayers Local 7 Union, that Bricklayers Local 7 Union did not want Duer in the Tri-County plan anymore. Whelan also sent an email message to fellow auditor Dobranic, expressing his concerns that the purpose of the audits–"for the benefit of the Union"– might violate ERISA. Further, the two Duer office clericals at issue never filed any claims, or received any health insurance benefits from Tri-County, because both were covered under their husbands' insurance plans. Agatha Griebel was entitled to continuing health insurance coverage through Tri-County as a retiree in her own right, and as a surviving spouse of her husband, who worked at Duer until four weeks prior to his death. Thus, the plan never suffered, or was at a true risk of, any loss.

**B.**

Tri-County alleges that the district court erred by failing to acknowledge the Trustees' obligations to *all* participants, and not merely Duer's employees. In support, Tri-County cites two passages from the district court's opinion. These passages do not support its argument, which is without merit. In any event, the district court's fact finding that the Trustees acted "in the interests of the Laborers and Bricklayers unions," supports its legal conclusion that Tri-County breached its

fiduciary duties under § 1104(a) to act "solely in the interest of" and "for the exclusive purpose" of providing benefits to participants and beneficiaries.

## C.

Next, Tri-County argues that the district court erred by failing to acknowledge that the Duer's participation in the Plan was amended by the language of the July 2000 Letter of Assent.

The district court found that the 2000 Assent of Participation applies only to Duer's office and supervisory personnel and that "its language specifically excludes the Plaintiff bricklayers," and that the 2000 Assent did not supersede the 1986 Assent of Participation covering the Plaintiff bricklayers. Tri-County claims that, although the 2000 Assent applies "primarily" to office and supervisory employees, the phrase "that *all* employees *including* office and supervisory employees, may be terminated if there were contributions on behalf of an employee who was not permitted to participate" also authorized Tri-County to terminate the bricklayers. This argument should be rejected. The 2000 Assent clearly states that it applies to all office and supervisory employees and expressly excludes production and maintenance employees and employees who typically perform work under any collective bargaining agreement in the construction industry.

In any event, even if the 2000 Assent authorized the action, the Trustees still violated ERISA by seizing on relatively minor transgressions as an excuse to terminate the non-union bricklayers and forward a union organizing campaign. Therefore, Tri-County's arguments regarding the interpretation of the plan are without merit.

## D.

Fourth, Tri-County argues that the district court erred in failing to conclude that the 1986 Settlement and Letter of Assent were contracts of indefinite duration, terminable at-will. This

argument must be rejected. The 1986 Assent of Participation provides for continuous contributions and coverage "until such time as the parties hereto mutually agree to terminate this Assent of Participation." Furthermore, as the district court found, the parties stipulated to that effect. Tri-County's arguments to the contrary are based on inapposite authority and are without merit.

**E.**

Lastly, Tri-County contends that the district court erred in granting a permanent injunction. We find no abuse of discretion here, as Duer obtained actual success on the merits. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (stating that when the injunction is permanent, actual success on the merits must be shown); *see generally Waste Management, Inc. of Tenn. v. Gov't of Nashville & Davidson County*, 130 F.3d 731, 735 (6th Cir. 1997) (stating abuse of discretion standard). However, we caution that the permanent injunction here pertains only to the facts presented in this action, and does not otherwise limit the Trustees from taking legitimate action to maintain appropriate discipline regarding the enforcement, collection, and application of benefits, or otherwise comply with their fiduciary duties under ERISA.

**III.**

For all of the foregoing reasons, the judgment of the district court is **AFFIRMED.**